MILLER, MAYHEW & Co. *vs.* THE CUMBERLAND COTTON FACTORY, SAMUEL M. SEMMES, THOMAS J. McKAIG, ALPHEUS BEALL & OTHERS.

ACT OF 1847, CH. 228; LIEN OF MINERS, MECHANICS, &c., IN ALLEGANY COUNTY.— Upon a proper construction of the several sections of the Act of 1847, ch. 228, entitled, "An Act for the protection of miners, mechanics, laborers and others employed in mines and manufactories in the county of Allegany, and for other purposes," and considering the said several sections collectively, it is apparent that the creditors entitled to a lien under the said Act, must not only be of the particular classes enumerated in the Act, but that they must also have a residence for the time being in Allegany county.

APPEAL from the Circuit Court for Allegany county.

This appeal was taken by the petitioners in the Court below, from an order of said Court, ( WEISEL, J.,) dismissing their petition, which prayed for the appointment of a receiver under the Acts of 1847, ch. 228, and 1852, ch. 229, to take charge of the affairs of the Cumberland Cotton Factory, and to enforce the lien to which they claimed to be entitled under said Acts, against certain personal property, which, at the time said lien attached, was the property of said factory, but had been since sold to the codefendants of said Cotton Factory, at sheriff's sale, under executions upon certain judgments. The allegations of the petition and answers, and all the facts of the case are fully set out in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, and GOLDSBOROUGH, J.

*Geo. A. Thruston* for the appellants.

The petition of the complainants in this case was dismissed, solely because the receiver was not appointed at the January term, 1858 ; the petition having been filed on the 19th of December, 1857, between it and the preceding

October term, 1857 ; the learned judge, who decided this case below, being of opinion, that the jurisdiction of the Circuit Court ceased with the January term, 1858.

To confine the jurisdiction of the Court to so limited a period, is not consonant with the spirit of these Acts of 1847 and 1852, and would operate in many cases with the greatest harshness, or frequently fail to effect their object.

Such construction would frequently deprive parties of the benefit of amendments, as the laws then stood ; and as the same is codified, it is sufficiently, if not exactly similar to the practice at law and in equity ; for illustration, see *New Code Public General Laws, Art.* 16, *secs.* 16 and 17 ; *Article* 75, *secs.* 23, 24, *&c.*

The rules for the construction of statutes are also in direct opposition to the construction put on this statute by the order dismissing this petition.

One governing rule for such construction will be found in a decision of this Court, not originating with this Court, but fully approved by it, viz : "Acts of Assembly made relative to the administration of justice are to be liberally construed for the attainment of that important object." *Mitchell vs. Mitchell,* 1 *Gill,* 66.

The power given to the creditors to insist on the action of the Court, in so brief a period, conceding the word "shall," as used in the 4th section of the Act of 1847, requires the construction given to it, is a power given to be exercised for their benefit, and if so, can be waived, if such plainly appears not to be for their benefit. In this case, the appointment of a receiver at the instance of these complainants was useless, and could be of no avail, until it was determined that the personal property so sold and purchased by the other defendants, was first liable to the lien of the complainants. The cotton factory had no other property but this ; the statute provides for no summary mode of proceeding between one set of creditors and another.

The appointment of a receiver, so far from being beneficial and remedial, would have been an useless expense, if this personal property could not be made first liable in the hands of the other defendants, to the payment of the complainants' claim for raw cotton.

"In construing statutes, the real intent when ascertained, will always prevail over the literal sense of the terms." The occasion and necessity of the law is to be looked to ; to give the construction here sought, would defeat the very object of the law, as applicable to this law. May and shall are frequently convertible terms ; and when used in statutes conferring power, are sometimes used for each other. The object here was not only to get a receiver appointed under the law, but, in the same suit, to determine what the receiver could take, when and before his appointment. The Court will not appoint a receiver unless satisfied that there are special and peculiar circumstances requiring summary relief, and against the legal title, only in cases of fraud, clearly proven, and of imminent danger. *Farleng & Miller vs. Edwards,* 3 *Md. Rep.,* 99. *Clark vs. Ridgely,* 1 *Md. Ch. Dec.,* 90.

Here it might be said, the statute fixes the nescessary summary relief; but not against the parties, against whom the real relief is sought, and there are no circumstances alleged of imminent danger or fraud.

These cases are properly cognizable on the equity side of the Court. This has not been the practice, though such may have sometimes occurred. The nescessary steps to be taken, the peculiar relief sought, and the mode in which it is to be sought, are peculiarly according to the jurisdiction and practice in equity, viz: the appointment of a receiver, an officer known only to Courts of Equity. The duties and services to be performed and rendered by him, and the security he is to give, are similar to the duties and services of trustees and receivers, as known to Courts of

Equity, as remediable and punishable there, and inquirable into there.

Again, the submission of the whole case is to the Court, or a judge in vacation, and it ought to be borne in mind, that when this law of 1847 was passed, and up to the term succeeding the Constitution of 1850, our present Circuit Courts were County Courts presided over by three judges.

The proceeding is commenced by petition, and the defence brought to the notice of the Court, in and by an answer thereto, and this, too, when our old system of pleading was in full use and practice. When an issue is made, the Court is to do what? Exercise a jurisdiction peculiarly belonging to equity ; *i. e.*, consider whether a receiver should not be appointed.

The issue thus made, as provided by the fourth section, 1847, "should be tried by the Court of the county, or by any judge in vacation," excluding the submission to a jury to try the issues ; whilst in all cases at law, as a general rule, either party has a right to insist upon a jury, to try issues of fact, where his life, liberty or property are jeopardized.

Although, all the cotton ( raw ) was sold and delivered before October 1st, 1856, and the executions were not issued until November 5th, 1856, by reason of credits on which the cotton was sold, it only became payable for a short time before March 1st, 1857. All the personal property which, alone, the complainants could pursue under their statutory lien thereon, was sold under said executions on December 20th, 1857, and taken possession of by the defendants, and remained in their possession until, and long after this petition was filed ; indeed, as the record shows, until now.

To have confined the petition solely to the appointment of a receiver for the Cumberland Cotton Factory, would have been fruitless ; and yet, the lien was perfect under the Acts of Assembly. There was no mode of reaping any

benefit from it, except by combining with the application for the appointment of a receiver, an application also requiring these defendants and purchasers to recognize and yield to the lien. No other proceeding, involving so little litigation and but one suit, could be devised.

The Court should not have dismissed the petition, even though it had refused to appoint the receiver. The defendants and purchasers were regularly summoned into the Court, they appeared and answered, evidence was taken establishing the right of the complainants to be first paid out of the cotton under the statutes; and if the Court had even refused to appoint a receiver, it had power and jurisdiction to grant other relief than the statutory relief. No objections were made to the proceeding, to the evidence or mode of taking it, &c. There was nothing which could interfere with another application for a receiver. But we contend, that to appoint a receiver, until it was ascertained that the only effects he could receive, were held by other parties defendants, and until the conflicting claims between complainants and these other defendants were determined, would have been useless.

The statute gives the lien clearly by sections 2 and 3, (1847,) irrespective of the statutory mode of realizing it, by the appointment of a receiver. Lien is a matter of general equity jurisdiction. 1 *Sto. Eq. Jur.*, 506. The proceeding is entirely in *rem.* against other parties, as well as against the Cumberland Cotton Factory. These other parties had to be made parties defendants in the proceedings, before their rights and possession under the sheriff's sale could be affected; and in making them parties, a mode of proceeding had to be used which could properly bring them into Court. They were in possession, claiming title to all the personal property which the complainants had a lien on. See 2 *Sto. Eq. Jur.*, sec. 1526, *and* 1 *Dan. Ch. Pr.*, 276, 249.

We claim a reversal of the decision, and a judgment of the Court of Appeals against the defendants, and such other relief as this Court may deem within its power to grant in the way of relief to the complainants.

*Thomas J. McKaig, Jr.,* for the appellees, argued :

That the appeal in this case must be dismissed, because the Act of 1847, ch. 288, and its supplement, confers a special and limited jurisdiction upon the Circuit Court, and makes no provision for an appeal to this Court.

By the statute law of this State, the present mode of appeal was substituted for the more expensive and inconvenient proceeding by writ of error, and unless by express provision of some Act of Assembly an appeal will not lie in any case upon the law or equity side of the Circuit Court in which a writ of error would not lie.   Although the proceedings under this Act of Assembly assimilate in their character to a case in equity, still, as the whole proceeding is made returnable to the law term of the Court, to be there disposed of, this is neither a case of law nor equity, but a special and limited jurisdiction, and the Act conferring the jurisdiction not having given the right of appeal, no appeal lies.   *Savage Man. Co. vs. Owings,* 3 *Gill,* 497.   *Wilmington & Sus. R. R. Co. vs. Condon,* 8 *G. & J.,* 443.   *Swann et al. vs. Mayor & C. C. of Cumberland,* 8 *Gill,* 152.   *Lammott vs. Maulsby,* 8 *Md. Rep.,* 5.   The old proceeding in insolvency was very analogous to this, both commencing with a petition to the law side of the Court, yet this Court, in *Chase vs. Glenn,* 1 *Harris & Gill,* 160, and *Williams vs. Williams,* 5 *Gill,* 88, held that there was no appeal from any action of the Court below in reference to proceedings in insolvency, and the Legislature, in view of these decisions, amended the law by incorporating in it the right of appeal.

2nd. Because that portion of the 4th section of the Act

of 1847, ch. 228, which requires that the issue between the parties shall be tried and finally disposed of by the Court at the term to which such petition shall be presented, or at the next term of the Court, if the petition be filed in vacation, expressly negatives the idea of any appeal to this Court.

This was a local law for Allegany county, and that county, in the geological condition of its soil, and the character and pursuits of a large portion of its inhabitants, differs materially from that of any other county in the State. The vast majority of this large class of its inhabitants are daily laborers, employed in the mines, workshops, furnaces and rolling mills in operation throughout the mineral region of this county, and are dependent upon their daily wages for the support and maintenance of themselves and families. And the Legislature in passing this Act, which provides that if any individual, association, or body corporate engaged in mining or manufacturing, shall neglect or refuse, for the space of thirty days, to pay any indebtedness due their employees or furnishers of raw material, the proceeding marked out in the Act may be instituted, and further requiring that it should be finally disposed of at the first available term of the Court, intended chiefly to secure and compel, in the most summary manner, the prompt payment of all debts of the character just specified. To have given the right of appeal would have simply been to defeat the chief and principal object of the law, since before a decision could be reached in this Court, all possible injury to the claimants consequent upon this negligence or refusal to pay them, would have passed and gone.

3rd. Another significant fact evidencing that the Legislature did not intend that there should be an appeal under this law, is that the Act gives jurisdiction to the Circuit Court in all instances thereunder when the amount involved is over twenty-five dollars. This Court ordinarily takes

no cognizance of any suit involving less than one hundred dollars,—such suits being instituted under the jurisdiction granted to Justices of the Peace, and in reference to which the Circuit Court is the final appellate tribunal.

Upon the merits it was contended :

1st. That the appellants, in making the vendees at the sheriff's sale parties to this action, made a false step in the very inauguration of this proceeding, which is a fatal ob-jection to their right to any decree whatever. The claim upon which the proceeding is founded, purports to be against the Cumberland Cotton Factory. The Act of Assembly simply empowers the Court below to appoint a receiver to take charge of the personal property of the corporation neglecting or failing to pay, &c., and by the most liberal construction, nothing can be found in the Act to authorize the Court to decide in this summary manner, the rights of conflicting claimants to said property. If the Cumberland Cotton Factory neither owned nor possessed any personal property, then it would have been useless to appoint a receiver ; and even under the assumption that the property belonging to the company was in the possession of and claimed by others, the only thing the Court was authorized to do, was to appoint the receiver, and then of course it would have devolved upon such receiver to test and decide the title to this property in accordance with the just and known forms of the laws of this State. The Cumberland Cotton Factory alone should have been made defendant, and any order or decree by the Circuit Court against the other defendants, vendees at the sheriff's sale, would have been simply *coram non*.

2nd. Upon a proper construction of this Act of Assembly Miller, Mayhew & Co., being merchants in the city of Baltimore, and having furnished at that place the raw cotton upon which this claim is based, cannot claim any benefit from its provisions. To arrive at a correct construction

486 . MARYLAND REPORTS.

Miller, Mayhew & Co. *vs.* Cumbe-land Cotton Factory et als.

of a statute, we must look to the original intent and mean-
ing of the law-makers, and that intention may best be col-
lected from the cause and necessity of making the Act, or
from foreign circumstances. *Canal Co. vs. Railroad Co.*,
4 *G. & J.*, 152. *Dwarris on Statutes*, 726. At the time
of the passage of this Act, a large number of the corpora-
tions and associations engaged in manufacturing and min-
ing in the county of Allegany, were mere speculative bub-
bles, sustained solely by credit, and not owning in point of
fact the very land upon which their operations were carried
on. The vendors held mortgages upon all the property,
real and personal, of these companies, which were liable to
be foreclosed at any time, sweeping everything away, and
not leaving a dollar to pay the just claims of the unfortu-
nate operatives who were thereby thrown out employment
and reduced to abject penury and want. In addition to
this evil, these corporations were constantly in the habit of
making sudden assignments for the benefit of creditors,
whereby their operatives lost everything, or at most re-
ceived a few cents on the dollar as their *pro rata* share.
It was to remedy these evils and protect this helpless class
of citizens that the Legislature passed this law, and not to
give the merchants in the markets overt of the world, like
Miller, Mayhew & Co., rights in derogation of the com-
mon law against these corporations. The terms of an Act
are always understood as having regard to the subject mat-
ter ; (*Dwarris on Stat.*, 755 ;) and the title of this law,
"For the protection of miners, mechanics, laborers and
others employed in mines and manufactories in the county
of Allegany," and the additional fact that in the supple-
ment to the Act, which in several particulars materially
changes the original law, the word "employees" is used
alone without mentioning furnishers of raw material, con-
clusively demonstrates that the enlarged application sought
to be given to this statute is erroneous, and should not be

allowed. It is an accepted canon of law, that a thing which is not in the letter of a statute is not within the statute, unless it be within the intention of the law makers. *Dwarris on Stats.*, 755.

3rd. The raw material for which this debt was contracted, was not of the kind and character intended or meant by the Act of Assembly. There never had been, nor was there at the time of the passage of this Act, a cotton factory in operation in the county of Allegany; but even if there had been, the significant fact that the only raw materials specified in the Act were coal, iron ore and clay, products indigenous to the soil of the county, necessarily excludes everything else, even of a similar nature, and *a fortiori*, all things different in *genus* and description from those which are enumerated. (*Dwarris on Stats.*, 713. *Rex vs. Cunningham*, 5 *East.*, 478.) *Expressio unius est exclusio alterius*.

4th. The negligence and laches of the appellants, as evidenced by the lateness of their application for the appointment of a receiver under this Act, and in the subsequent proceedings thereunder, were such as to destroy their right, if they had any, under said Act.

Although this was a summary proceeding which they might have instituted within thirty days after this indebtedness became due, yet, by their own showing, they delayed nine months before commencing it, notwithstanding more than three months before their right accrued, all this property had been regularly sold under execution by the sheriff of Allegany county. And then, although, it is admitted that they had the right to have the issue tried and finally disposed of at the ensuing term of the Court, and there is no proof in the record that the Court was not ready and willing so to try and dispose of it, yet they suffered a period of nearly seven years to elapse before they asked a final disposition of the proceeding. In *Hanson & Wife et*

*al. vs. Worthington et al.*, 12 *Md. Rep.*, 420, and 17 *Md. Rep.*, 260, this Court held that in equity the question of laches and negligence must depend, and be decided by the circumstances of each case, and in 13 *Ohio*, 585, it was decided that where by the laches of the complainant, a sufficient time had been suffered to pass to render the Court unable to do justice between the parties, then that such laches constituted a bar to any recovery. That is the exact state of affairs presented by this record.

5th. The amount claimed in the petition not being due until March, 1857, and the appellees having on the 20th of December, 1856, three months previous, obtained a good and legal title, without notice of such indebtedness, it was too late then, within the meaning and intention of the statute, to proceed against these appellees, as purchasers at said sheriff's sale, simply because the lien could not attach until the amount was due, and at that time this property was neither owned or in possession of the Cumberland Cotton Factory.

6th. But even admitting that this lien existed prior to the sheriff's sale in December, 1856, *non obstante* it is not that character of lien which would warrant the Court below, or this Court, in disturbing or setting aside a judicial sale, in every respect regular and valid. *Elliott & Wife's Lessee vs. Knott*, 14 *Md. Rep.*, 134. *Jackson vs. Robinson*, 16 *Johnson*, 582. 23 *Miss.*, 496. 18 *Md. Rep.*, 513. *Neale vs. Clautice*, 7 *H. & J.*, 373. *Fowler vs. Lee*, 10 *G. & J.*, 385. 8 *Md. Rep.*, 321.

7th. The 3rd section of this Act, which requires the sheriff to exempt from execution and levy a sufficiency of property to pay any indebtedness of the character specified in the Act, making it his duty to enquire diligently relative to such indebtedness, and expressly declaring that if the employees or furnishers of raw material shall in any way suffer, be prejudiced or injured by refusal to comply with,

or negligence in executing the requirements hereof, the sheriff, together with his sureties, shall be bound and held liable for whatever of injury or damage shall be done in the premises, in consequence of such refusal or negligence, conclusively establishes the fact that the appellants have, in this case, in attempting to follow this property, entirely mistaken their remedy, and· that the only proper remedy that was left them, at the very inception of this litigation, was to have proceeded against the sheriff and his sureties. At the time of the filing of this petition, the lien either did or did not exist. If it did not, then the petition must have been dismissed. If it did, then by express provision of law, they were compelled to look to the sheriff and his sureties for indemnity.

8th. The 4th sec. of the Act requiring that the issue between the parties should be tried and finally disposed of at the ensuing term of the Court, and nearly seven years having elapsed since that time, the Circuit Court was at the time of passing the decree appealed from, totally divested of all jurisdiction to appoint a receiver under said Act as applied for. *Shivers vs. Wilson*, 5 *H. & J.*, 130. *Yerby vs. Lackland*, 6 *H. & J.*, 446. 20 *Md. Rep.*, 248. *Brice & Fisher vs. Cook, Gar. of Scarborough*, 6 *G. & J.*, 346. *Dwarris on Stats.*, 748, 757.

9th. The account filed with the petition does not set forth with sufficient clearness and distinctness the amount and nature of the indebtedness. It cannot be pretended for a moment that the appellants can claim any right to recover in this proceeding for anything except raw cotton, yet a part of this account is made up of various charges for dyeing, and the account itself commences with a balance against the cotton factory of over $3,000, and it is left to conjecture whether a part or the whole of this large balance is for dyeing also.

*Thos. J. McKaig,* also, for the appellees, argued :

1st. That the case made by the appellants is not within the provisions of the Act of 1847, ch. 228, and cited 8 *Md. Rep.,* 5. 1 *H. & J.,* 154 and 160. 5 *Gill,* 88.

2nd. That the provisions of the said Act are against common right, and will be construed strictly, as are our attachment laws.

3rd. That the petition was properly dismissed ; the time at which the Court could have acted in the appointment of a receiver had passed, and the Court was without jurisdiction.

4th. That the sale by the sheriff was good as to the purchaser. If the sheriff failed to do his duty, the Act gives a remedy against the sheriff and his bond, but no right to follow the property in the hands of an innocent purchaser, otherwise there would be no safety in judicial sales ; they would be a source of fraud.

On the question of *laches,* he cited 12 *Md. Rep.,* 420. 17 *Id.,* 260. 13 *Ohio,* 585. 14 *Md. Rep.,* 134. 18 *Md. Rep.,* 518. He also cited *Shivers vs. Wilson,* 5 *H. & J.,* 230. 6 *Id.,* 446. 20 *Id.,* 248. *Dwarris on Stat.,* 748, and 3 *Gill,* 497.

BOWIE, C. J., delivered the opinion of this Court.

This appeal presents the question, whether the appellants are entitled to a lien, and the remedies for its satisfaction, prescribed by the Act of 1847, ch. 228, and its supplements.

The appellants, merchants of the city of Baltimore, furnished cotton in bales to the appellees, "The Cumberland Cotton Factory," in the year 1856, amounting to $1,269.34, which being unpaid, they filed their petition in the Court below claiming a lien, and praying the appointment of a receiver. They charge that at the time they furnished the cotton, the company was the owner of, and in possession of

certain personal property, which is, and always was liable, since said raw cotton was furnished, to be sold for the benefit of the appellants, but that two executions were issued on November 5th, 1856, by certain stockholders therein named, against the Cumberland Cotton Factory, on two judgments, and that at sheriff's sale under those executions, the property was purchased by the co-defendants of the company, and is now in their possession. They pray the proceeds of the property may be applied to the payment of their claim.

On the 28th of December, 1857, an order was passed requiring the defendants to show cause why a receiver should not be appointed and summons issued. The individual respondents, neither admitting nor denying the indebtedness of the Company to the petitioners, in their answers insist that the sale to them by the sheriff, under the executions mentioned in the petition, was legal and valid, and aver, that if the petitioners have been injured by the negligence or action of the sheriff, their remedy is against him. They aver that the third section of the Act of 1847, ch. 228, made it the duty of the sheriff to ascertain all outstanding liens, and exempt from levy a sufficiency of property to cover such indebtedness. But they deny that the petitioners have any right to the benefit of said Act, which was passed for the protection of miners, mechanics, laborers and others, employed in mines and manufactories in the county of Allegany, and the petitioners, being merchants in the city of Baltimore, are not within the purview of the Act, &c.

The Court below, waiving other objections, relied upon in argument, held that the Act of 1847, ch. 228, and its supplements, conferred upon it a special limited jurisdiction, which must be strictly pursued, and the time prescribed by the law for the trial of the issues and appointment of a receiver having expired, the jurisdiction of the Court had ceased, wherefore the petition was dismissed. Whence this appeal.

The appellants insist that the proceeding is one in equity, the appointment of a receiver being the peculiar province of that Court, and that the restrictions as to the time of trying the issues and appointment of a receiver, were for the benefit of the creditors and directors, to promote dispatch, not to be literally enforced, as such a construction would enable defendants to defeat the purposes of the law or deprive parties of the means of proof.

It was further insisted, that although the law created a lien and pointed out a mode in which it might be enforced, yet it was a general lien and might be executed through the usual forms of a Court of Equity, in which liens were properly cognizable.

All these questions, although highly important and interesting, are posterior in order to the inquiry whether the petitioners are within the provisions of the law which creates a lien in behalf of certain classes of creditors. The intention of the Legislature is to be gathered from a consideration of every part of the Act. 2 *Cranch*, 386.

For the purpose of ascertaining this intent, "the cause or necessity of making the Act or foreign circumstances may be considered." *Frazier vs. Warfield*, 13 *Md. Rep.*, 301. 4 *G. & J.*, 152.

The object of the Act of 1847, ch. 228, is indicated by its title, viz. "An Act for the protection of miners, mechanics, laborers and others, employed in mines and manufactories in the county of Allegany, and for other purposes."

The first section enacts, that if any individual, association or body corporate, engaged in mining or manufacturing within the county of Allegany, shall, for the space of ninety days, refuse to pay the daily, weekly or monthly wages, as the same may be due, of the persons in his or their employ, whether miners, mechanics, laborers, etc., or shall refuse for the period aforesaid, to pay the furnisher or furnishers of any ore, clay, coal "or other raw material gen-

erally used in manufacturing establishments,'' whether mills, workshops, brick-yards or furnaces, the amount con- tracted to be paid for such ore or other raw material, it shall be lawful upon petition of said miners, or of said fur- nishers of ore, clay, coal or ''other raw material,'' for the Court, or judge of the proper judicial district in vacation, in which such mines or manufactories are situated, to appoint a receiver to take charge of the affairs of such in- dividual or body corporate, that shall or may have refused to pay as aforesaid, with a view to their liquidation and settlement under and by authority of the Court.

Section 2nd prescribes the duty of the receiver, autho- rises him to take charge of all property of the defaulting debtors of every description whatever, other than real es- tate, to sell the same and pay off the debts due to the per- sons in his or their employ, thereinbefore designated and included, and to the furnishers of ore, clay, coal or other raw material as aforesaid, provided that no attachment or execution, nor any mortgage, bond or deed, or bill of sale or deed of trust, nor other lien in the law, except such as had been theretofore provided, prior to the passage of that Act for the benefit of mechanics, shall reach, hold, bind or operate as a lien on the goods and chattels, property or effects of the debtor, to the prejudice of the persons in their employ, etc.

The third section requiring every sheriff having any attachment or execution in his hands, against the goods, etc., of any individual or corporation engaged in mining or manufacturing as aforesaid, carefully to examine and inquire whether the said individual or body corporate be indebted as aforesaid, and if so, to exempt from levy a sufficiency of the property of the character and kind therein mentioned, to discharge all such indebtedness in any event whatever, and if the persons in the employ of said indi- vidual or body corporate, or the furnisher or furnishers of

ore, clay or other raw material, shall in any way suffer, be prejudiced or injured by refusal to comply with the requirements of the Act, then the sheriff with their sureties, shall be liable for whatever injury or damage shall be done in consequence of such negligence.

It is apparent from these sections, taken collectively, the creditors entitled to a lien under the Act of 1847, must not only be of the particular classes enumerated, but that those must have a residence in the county, for the time being.

The injunction upon the sheriff, carefully to examine and inquire whether such individuals or corporations engaged in mining or manufacturing, be indebted to such persons as thereinbefore described, could not be complied with, if it embraced non-resident furnishers of raw material.

The liens commenced by operation of law, as soon as the indebtedness accrued. No registry of such claims was required, and difficult as it might be to conform to the law, in cases of resident creditors, it would be impossible as to non-resident.

If the petitioners in this case, instead of proceeding against the corporation, had sued the sheriff and his sureties for non-compliance with the provisions of the third section, they could not have recovered, because the law requires impossibilities of no one.

The petitioners being beyond the perview of the third section, we must presume the intention of the Legislature, in framing the preceding sections, was to include only the same classes of creditors, unless we attach a different meaning to the same words, when used in other parts of the Act. The context, however, of the preceding sections, as well as the title of the law, shows it was designed to be confined to creditors resident in the county of the enumerated classes.

As the petitioners are not among those entitled to the lien intended by the Acts referred to, it is unnecessary to inquire whether the proceedings were on the equity or law side of the Court, or might be enforced under its general or special jurisdiction. The record describes the proceedings as of the equity side of the Court, but if there was no lien, there was nothing for either jurisdiction to operate upon.

*Decree affirmed.*