THOMAS A. HICKS and WILLIAM C. DICKEY, trading as HICKS & DICKEY *vs.* THE CONSOLIDATION COAL COMPANY.

*Construction of Local laws of Alleghany County, relating to Priority of Claim, over a Mortgagee, of Vendor of Coal to a Manufacturing Corporation—Raw material.*

The Act of 1847, ch. 28, (a local law applicable to Alleghany County) declared that if any individual, association of individuals, or body corporate, engaged in mining or manufacturing,

Hicks and Dickey *vs.* Consolidation Coal Co.

within the County of Alleghany, should, for the space of ninety days refuse, neglect, or fail to pay, as they might become due, the wages of persons in his or their employment, whether miners, mechanics, laborers, clerks, contractors, or agents, or should refuse, neglect, or fail, for the same period, to pay the furnisher or furnishers of any ore, clay, coal, or other raw material generally used in manufacturing establishments, they should become liable to a receivership of their affairs; provided that the aggregate indebtedness should amount to $500. It was made the duty of the receiver when appointed, to take charge of all property, of every kind belonging to the party so in default, except real estate, and to reduce it into money, and to pay off the claims of the abovementioned persons *pro rata;* and it was further enacted that no mortgage or other lien should have priority over these claims, except mechanics' liens. The Act of 1852, ch. 229, reduced the period of default from ninety days to thirty. The Code of 1860, simplified the language of these Acts, and extended their benefits to raw material of every description, and reduced to $25 the indebtedness necessary for their operation, and gave this remedy to "furnishers of any raw material," making no restriction whatever. The Act of 1878, ch. 320, (section 189 of Article 1 of the Code of Public Local Laws,) repealed and re-enacted the section of the Code in question, changing it only by subjecting to its liabilities "any association or body corporate carrying on any trade or business" in Alleghany County. HELD:

1st. That the object of this legislation was, among other things, to secure to the vendors of coal and some other articles the payment of the price for which it was sold.

2nd. That the successive changes have embraced a larger number of objects within its scope, but it cannot be supposed that the protection originally given to " ore, clay and coal" was ever intended to be withdrawn or diminished.

3rd. That the statute was not intended to refer only to such raw material as became incorporated in the course of manufacture with the product evolved, but makes the claim of the vendors absolute and payable out of the sales of all the personal property of their debtor.

4th. That the claim of a coal mining corporation of Alleghany County for coal sold by it to a manufacturing corporation in Alleghany County, for which receivers had been appointed under said statute, was entitled to be paid out of the sales of the personal property of the corporation, in preference to the claim of a prior

mortgagee of said property; and its rights could not be defeated by showing that the manufacturing corporation had not used the coal in any article that it had manufactured.

The mines of the coal company being located in Alleghany County, and the coal having been furnished from these mines to the manufacturing company, whose works were in the same county, it was immaterial in respect of the lien given by the statute, whether the coal company was or not a resident of Alleghany County at the time the suit was brought.

APPEAL from the Circuit Court for Alleghany County, in Equity.

This appeal was taken from an order of the lower Court referring the auditor's account to the auditor to be re-stated in accordance with the views expressed in the opinion of the Court. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, and McSHERRY, J.

*Robert R. Henderson,* and *Benjamin A. Richmond,* for the appellants.

*Robert H. Gordon,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

By an order of the Circuit Court for Alleghany County, sitting in equity, all the property, real and personal, of the Crown and Cumberland Steel Company was placed in the hands of receivers. The Consolidation Coal Company filed its petition asking that it might be made a party complainant, and that it might be paid a sum alleged to be due for certain quantities of coal sold to the other company. The sale and delivery of the coal were proved at the prices claimed. The property of the Steel Company having been sold, the auditor filed a

report distributing the proceeds of sales of personalty, and rejecting the claim of the Coal Company. The net balance in the hands of the receivers was audited to Hicks and Dickey on account of a mortgage which they hold on the property. On exceptions to the audit, the Court held that the Coal Company was entitled to a lien on the net amount for distribution, which had priority over the mortgage, and it referred the case to the auditor to state another account in accordance with its opinion. Appeal by Hicks and Dickey.

The question at issue depends on the local legislation applicable to Alleghany County. The Act of 1847, chapter 228, declared that if any individual, association of individuals, or body corporate engaged in mining or manufacturing within the County of Alleghany should for the space of ninety days refuse, neglect or fail to pay as they might become due the wages of persons in his or their employment whether miners, mechanics, laborers, clerks, contractors or agents; or should refuse, neglect or fail for the same period to pay the furnisher or furnishers of any ore, clay, coal, or other raw material generally used in manufacturing establishments, they should become liable to a receivership of their affairs, provided that the aggregate indebtedness should amount to five hundred dollars. It was made the duty of the receiver when appointed to take charge of all property of every kind belonging to the party so in default, except real estate, and to reduce it into money and to pay off the claims of the above mentioned persons *pro rata;* and it was further enacted that no mortgage or other lien should have priority over these claims, except mechanics' liens. The furnishers of coal are by name and special designation declared to be entitled to this extraordinary remedy against the personal property of the individuals and corporations mentioned in the Act, and so are the furnishers of ore, clay, or other raw material generally used in manufacturing

establishments. It is not said that they are to be paid out of the sales of the products, with which the raw material may have become incorporated in the process of manufacturing; but out of the sales of all the personal property of their debtor. The statute makes their claim absolute, and does not restrict or qualify it by any relation to the products resulting from manufacture. It is placed on the same footing with the wages due to clerks and laborers and other employés. They are all to be paid in the same way *pro rata* out of all the personal property of the delinquent debtor. The particular product to which the labor service and material may have contributed is not once mentioned in the statute; nor is it made a requisite that there should be any product at all. The essential fact is that money should be due and unpaid for the time specified for labor and services, and for coal and the other articles described as raw material. We look in vain for any clause or provision in the statute, which would enable the manufacturer to defeat these claims by showing that he had manufactured nothing. Nor does the statute say that he could defeat the right of the seller of the coal by showing that he had not used it in any article which he had manufactured; the only conditions prescribed are that the owner of the coal has sold it, and that his debt has remained unpaid for the space of ninety days. The policy inaugurated by this statute has been ever since pursued, and its provisions have been made more stringent.

The Act of 1852, chapter 229, reduced the period of default from ninety days to thirty. The Code of 1860, simplified the language of these Acts, by dispensing with much of their verbiage; it also extended their benefit to raw material of every description, and it reduced to twenty-five dollars the indebtedness necessary for the operation of these Acts. The Act of 1847, com-

prehended "ore, clay, coal or other raw material generally used in manufacturing establishments;" but the Code of 1860, gives this remedy to "furnishers of *any raw material,*" making no restriction whatever.   The Act of 1878, chapter 320, repealed and re-enacted the section of the Code in question, changing it only by subjecting to its liabilities "any association or body corporate carrying on any trade or business" in Alleghany County.   The law thus modified appears without change in our present Code under the Local Law of Alleghany County; sections 189 to 193 inclusive.   It is very obvious that the object of this legislation is, among other things, to secure to the vendors of coal and some other articles payment of the price for which it is sold.   Very summary and unusual means are provided to attain this end; the policy of the law making power has never varied from the time when it was first adopted.   The successive changes have embraced a larger number of objects within its scope; but it cannot be supposed that the protection originally given to "ore, clay and coal" was ever intended to be withdrawn or diminished.   Instead of describing them by name as was done originally, the subsequent legislation has used general terms which comprehend them, and also other additional objects. For these reasons we cannot accede to the argument of the appellants that the statute was intended to refer only to such raw material as became incorporated in the course of manufacture with the product evolved.

It will be seen that it is not our purpose to give a definition of the words *"raw material."*   We are content to leave this task to lexicographers; our own duty is performed when we ascertain the meaning of the Legislature, and give effect to it by the construction of the statute.

The amount due in this case is more than fifteen hundred dollars, and it had been due more than nine months

when the Consolidation Coal Company filed its petition. We perceive nothing irregular in the filing of the petition in this case. The sellers of the coal had a right to apply for a receivership. Receivers having been appointed on the application of another party, the assets of the Steel Company could be fully distributed by them to those who were entitled to be paid; and it was proper that all parties having claims should file them in this case. Nor do we think that these petitioners were excluded by the ruling made in the case of *Miller, Mayhew & Co. vs. Cumberland and Cotton Factory, et al.,* 26 *Md.,* 478, that no creditors are entitled to this lien except those who have a residence in Alleghany County for the time being. The pleadings and proofs show that the mines of the Coal Company are located in Alleghany County, and that the coal was furnished from these mines to the Steel Company, and that the works of the latter company are in the same county.

*Order affirmed, with costs.*

(Decided 10th February, 1893.)