In the Matter of LEROY FANTASIES, INC., et al., Doing Business as MAXWELL'S PLUM, a Joint Venture, Appellants, v. JOSEPH C. SWIDLER et al., Constituting the Public Service Commission of the State of New York, et al., Respondents.

Third Department, April 18, 1974.

*Murray A. Gordon, P. C.,* for Leroy Fantasies, Inc., and another, appellants.

*Peter H. Schiff* and *John K. Rosenberg* for Joseph C. Swidler and others, respondents.

*Williams & O'Neill* for Consolidated Edison Company of New York, Inc., respondent.

GREENBLOTT, J. P.  This is an appeal from a judgment of the Supreme Court at Special Term, entered January 24, 1974 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to vacate a determination of the Public Service Commission directing Consolidated Edison Company of New York, Inc. to discontinue gas service to Maxwell's Plum Restaurant unless Maxwell's Plum Restaurant discontinues the use of unmantled gas lamps as described in respondents' order.

Petitioners, owners of a restaurant in New York City, instituted this proceeding to vacate and annul orders of the respondent Public Service Commission (PSC) which directed Consolidated Edison Company of New York, Inc. (Con Ed) to terminate the supply of natural gas to petitioners' restaurant unless the use of unmantled gas lamps is discontinued.  In the alternative, petitioners seek an order remanding the matter to PSC for a hearing.

Maxwell's Plum is a popular and successful restaurant in New York City whose fixtures and furnishings were gathered

and chosen with meticulous care and expense. Included among them are hanging Tiffany lamps, special mosaic and colored glass wall panels, mirrors with figures etched upon them, ceramic animals and animal heads, carved mahogany walls and bar, a beaten copper ceiling, fresh cut flowers and 31 dual-burner natural gas lamps individually hand cast of brass. The natural gas lamps are apparently one of the important interior design elements of the restaurant. They produce a flickering yellow and blue flame approximately five inches high which creates a soft flattering light resulting in a mood of lively warmth. Petitioners contend that any change in the character of the lighting produced by these lamps could destroy the restaurant's ambience with potentially disastrous economic repercussions.

By order of September 12, 1972, in a continuing proceeding (case 25766) dealing with proposed restrictions on supply and use of natural gas in areas of New York State affected by a gas shortage, PSC directed affected utilities to notify customers that future use of gas torches might be restricted or terminated. Petitioners never received such notice from Con Ed. On January 30, 1973, PSC ordered the use of natural gas in decorative torches to be discontinued. Decorative torches were defined as: "any ornamental device in which gas is used as a fuel to produce an open flame, whether or not such flame is open to the atmosphere or enclosed in glass (or other appropriate covering). It shall not mean 'gas lights' wherein a mantle is employed that enables the gas to be converted to useful lighting."

On July 19, 1973, PSC directed Con Ed to discontinue natural gas service to Maxwell's Plum by August 31, 1973 unless the natural gas lamps were extinguished or converted so that mantles * would be installed. Because petitioners had never received the required notice, extensions were granted by PSC, and subsequent court stays have maintained the *status quo* up to the present time.

Petitioners contend that the determination of PSC should be set aside for several reasons. First, they argue that the jurisdiction of the PSC does not extend to monitoring the use of devices in a restaurant such as Maxwell's Plum. Secondly, they contend that the statutory delegation of power to the PSC is vague and therefore unconstitutional. Third, they contend

---

* A mantle is a hollow bag-shaped or spherical device, usually made of fire proof cloth, that fits as a cap over the orifice of a gas lamp. The gas passes through the cloth and burns on the surface of the mantle, which becomes incandescent.

that, if the PSC has such authority, it failed to make a requisite finding that Con Ed is unable to meet the reasonable needs of its customers and of persons or corporations applying for new or additional gas service. Fourth, petitioners argue that the prohibition against "decorative torches" does not include the subject gas lamps which are used primarily for illumination since their decorative or ornamental use is merely incidental. Fifth, they argue that the order of the PSC will not necessarily result in a gas saving. Sixth, they contend that PSC arbitrarily refused to accept an offer of petitioners to convert several items of other equipment to electricity and thereby save an amount of gas in excess of that used by the gas lamps if they should be permitted to continue the unmantled use of the lamps. Finally, they urge that PSC failed to allow petitioners a hearing as mandated by subdivision 5 of section 66 of the Public Service Law or under the due process clause of the State and Federal Constitutions.

None of these contentions are meritorious. Section 66 of the Public Service Law sets forth the general powers of the PSC in regard to gas and electricity. Subdivision 2 provides as follows:

The commission shall: "2. Investigate and ascertain, from time to time, the quality of gas supplied by persons, corporations and municipalities; examine or investigate the methods employed by such persons, corporations and municipalities in manufacturing, distributing and supplying gas or electricity for light, heat or power and in transmitting the same * * * and may order the curtailment or discontinuance of the use of natural gas for manufacturing or industrial purposes, for periods aggregating not to exceed four months in any calendar year, if it is established to the satisfaction of the commission that the supply of natural gas is not adequate to meet the reasonable demands of domestic consumption and *may prohibit the use of natural gas in wasteful devices and practices.*" (Emphasis added.)

Petitioners argue that the authority to prohibit the use of wasteful devices and practices is limited to prohibiting such devices and practices by industrial and manufacturing customers, and further, petitioners argue that, in any event, subdivision 2 of section 66 requires a finding of a gas shortage as a prerequisite to the banning of the use of the gas in wasteful devices.

We concur in Special Term's decision that subdivision 2 of section 66, which gives PSC the power to prohibit wasteful

devices and practices with respect to the consumption of natural gas, extends beyond such uses by industrial and manufacturing concerns.

Petitioners argue that the absence of a semi-colon between "consumption" and "and may prohibit, [etc.]" indicates that the Legislature intended to limit PSC's power to prohibit natural gas usage in wasteful devices to uses for industrial purposes for up to four months. Although the absence of a semi-colon is grammatically ambiguous, we feel that the grant of power to "prohibit the use of natural gas in wasteful devices" is separate and distinct from the power to "order the curtailment or discontinuance" of gas usage for industrial purposes. Were this not so, and were the power over natural gas usage in wasteful devices meant to coincide with the power to discontinue industrial usage, it would not have been necessary to grant the specific power to impose a prohibition on the use of natural gas in wasteful devices.

We also disagree with petitioners' contention that the statute fails to create an adequate standard against which to review the PSC's actions and is, therefore, an illegal delegation of legislative authority. In our view, the word "wasteful" is neither vague nor indefinite. It would be impossible for the Legislature to enumerate the numerous situations which constitute wasteful devices and practices and to formulate specific rules for each situation. (*Matter of City of Utica* v. *Water Pollution Control Bd.*, 5 N Y 2d 164.) In light of the complexities of the area to be regulated, subdivision 2 of section 66 of the Public Service Law sets up a sufficient standard.

In regard to the question of whether the "decorative torch" was a wasteful device or practice, there has been no evidence produced by petitioners to overcome the determination by PSC that an unmantled gas lamp uses more gas to produce a specified amount of illumination than does a mantled gas lamp. Furthermore, it is obvious that the gas lamps in petitioners' restaurant fall within the definition of "decorative torches", notwithstanding their illuminating function.

Finally, petitioners' contention that they were improperly deprived of an opportunity for an evidentiary hearing is without substance. The banning of decorative torches was an act legislative in nature. So long as the prohibition of wasteful devices was susceptible of review at some stage to determine if such prohibition was within the power of PSC, the rights of petitioners and others similarly situated have been protected. The

examination by this court into the PSC's statutory authority has satisfied that review requirement.

Nor is the character of PSC's order as legislative changed by the petitioners' request for an exemption, for the effect of the order is not to deprive petitioners of property, since, in reality, it does not prohibit the use of petitioners' lamps, but rather imposes reasonable restrictions on *future* uses of gas to *be acquired* in connection with such lamps. Petitioners' argument is no more sound than would be an argument by owners of motor vehicles that the reduction in speed limits, with the possibility of revocation of drivers' licenses in the event of violations, deprives them of the use of such vehicles without due process. Furthermore, all the facts asserted by petitioners as essential to a determination were presented in written form to PSC before it determined to disallow an exemption, wherefore there was no deprivation of any of petitioners' constitutional rights.

The remainder of petitioners' contentions have been examined and found to be without merit.

The judgment should be affirmed, without costs.

COOKE, KANE, MAIN and REYNOLDS, JJ., concur.

Judgment affirmed, without costs.