# MAYOR AND CITY COUNCIL OF BALTIMORE
## ET AL.
### *vs.*
# ELIZABETH M. WILLIAMS AND WILLIAM P. CHUNN.

*Statutes: construction; intention, how to be sought; occasion of
the passing of an Act; "adjacent to." Public improve-
ments: discretion of municipal authorities.*

Where a statute authorizing public improvements leaves the
detail of the plans to the discretion of the municipal officials,
its exercise will not be interfered with by the courts, except in
cases of fraud or bad faith.                              p. 296

Chapter 485 of the Acts of 1910, authorizing Baltimore City
to issue bonds for "a plan of comprehensive improvement of
the water front adjacent to the Patapsco River," did not have
the effect of restricting the use of the funds to make improve-
ment of docks and piers, or the dredging of channels; it was:
*Held,* that under this Act it was within the discretion of the
municipal authorities to use part of the fund in improving the
streets leading to the water front, even including the widening
of certain streets and the establishing of squares or open spaces;
and even though such squares should be at a distance of a mile
or more from the water.                                   p. 299

In construing statutes the cardinal rule is that the intention
of the Legislature is to be carried out; such intention is to be
sought not only from the words in every part of the statute,
but also it is to be looked for in the causes or necessities for the
making of the Act.                                    pp. 297-298

The words *"adjacent to"* do not mean *"next to"* or *"adjoin-
ing";* the expression has been held to apply to a distance of
three and even of fifteen miles.                          p. 297

*Decided November 14th, 1916.*

Appeal from Circuit Court No. 2 of Baltimore City. (Bond, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

*George Arnold Frick, Assistant City Solicitor,* and *Robert Biggs* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellants.

*A. C. Trippe* filed a brief on behalf of the appellants as *amicus curiæ.*

*Edgar Allan Poe* (with whom were *J. Kemp Bartlett* and *L. B. Keene Claggett* on the brief), for the appellees.

Stockbridge, J., delivered the opinion of the Court.

When the General Assembly of 1910 met there was introduced a bill (Ch. 485, p. 630) having for its title the following:

"A Bill Entitled

An Act to authorize and empower the Mayor and City Council of Baltimore to issue its stock to an amount not exceeding fifty million dollars ($50,-000,000) for the purpose of defraying the costs and expenses of laying out, projecting, constructing and establishing a comprehensive system for the improvement of the water front of, adjacent to and along the Patapsco River and its tributaries, both within and without the limits of the City of Baltimore, including therein the acquisition of property and streets, the alteration and construction of wharves, docks and piers, and of warehouses, sheds, structures and buildings, with the right to lease the same, the laying out, closing, grading and paving the streets, the fixing of building lines and the width of sidewalks, the enlarging or diminishing, and the cleaning, of the harbor or basin and the channels

292    M. & C. C. OF BALTO. vs. WILLIAMS.

Opinion of the Court.                    [129

and channel approaches, the fixing of buoys and the doing of all other germane things; to authorize the submission of ordinances to that end to the legal voters of the City of Baltimore; and to clothe the Mayor and City Council of Baltimore with full power and authority to carry into effect the improvements and public work above mentioned."

In the course of its legislative journey the bill was amended in several particulars, both in the body and the title. The important amendments were the reduction of the proposed loan from $50,000,000 to $5,000,000, and the striking out of the authority conferred by the original bill to extend the system of improvement contemplated to points outside the limits of the City of Baltimore. While the Record does not show the reason for the modifications, an attempt has been made to do so in the brief and argument of the appellants. Without attempting to pass upon these reasons, it is sufficient to say, that the modifications made in the title restricting the scope of the bill were greater than those in the body of the Act as passed.

The first section of the Act provided for the issuance of $5,000,000 of city stock, the fund realized from the sale of which was to be treated as a special fund designated as "The Harbor Improvement Fund," and which was to be exclusively applicable to the work and objects set out by the Act.

Section 2 of the Act defined the specific purposes to be accomplished, for which the loan was authorized to be made, and these were included in seven sub-sections, all of which had for their immediate object the "constructing and establishing of a comprehensive system for the improvement of the water front of, adjacent to and along the Patapsco River and its tributaries, both within the limits of the City of Baltimore." The third and fifth of the sub-sections are those which are particularly involved in this case, and read as follows:

"3.  The acquisition, from time to time, by gift, purchase, lease, whatever the duration of the lease, or other methods of acquisition, or by condemnation, of any land or property whatsoever, including streets, avenues, lanes or alleys, and interests, franchises, easements, rights and privileges of any and every kind, whether within the limits of the City of Baltimore, which may be proper or desirable in connection with the objects of this Act; and no ordinance or ordinances shall, in any case, be necessary to the acceptance of any conveyance."

"5.  The laying out, opening, extending, widening, narrowing, straightening, closing, grading, paving and curbing of any streets, avenues, lanes and alleys, or parts thereof, adjacent to or leading to, or along, said water front, or leading, or adjacent to, or along or being upon, any of the public wharves, docks and piers now or hereafter to be constructed, whether such streets, avenues, lanes or alleys, or parts thereof, may be within the limits of the City of Baltimore, and the establishment and fixing of the building lines thereon and the width of the sidewalks thereof, all as may be proper or desirable in connection with the objects of this Act."

While the title of the bill as passed omitted the mention of the "fixing of building lines and the width of side-walks," the power so to do was retained in the bill itself.

At the conclusion of the enumeration of purposes in the second section, was the following proviso:

"Provided, however, that this enumeration of special objects and purposes shall not be taken or construed as restricting or impairing, in any degree, the scope of the general objects and purposes hereinbefore mentioned as contemplated by this Act."

By section 3 of the Act, it was still further provided, that the Mayor and City Council of Baltimore should be vested with full power and authority to execute and carry into effect

each and all of the objects contemplated by the Act, and to do any and all things which, by anything short of a palpably forced construction it might deem desirable, convenient or proper to further and accomplish the objects of the Act, or any of them.

By section 4, the execution of the various powers enumerated in section 2 were to be carried out by certain of the departments of the municipal government, acting under the general supervision of the Board of Estimates, and among the provisions in section 4, it was set out that when resort was necessary to "condemnation proceedings in connection with the laying out, opening, extending, widening, narrowing, straightening or closing of any streets, avenues, lanes and alleys or parts thereof," such proceeding should be had and conducted by the Commissioners, for Opening Streets.

This bill was signed and became a law on April 11th, 1910.

By an ordinance of the Mayor and City Council, approved October 3rd, 1914, and numbered No. 518, provision was made for the issuance of $1,500,000 Baltimore City stock, as a part of the $5,000,000 authorized by the Act of 1910. This ordinance made provision for its submission to the voters of this city on November 3rd, 1914, in compliance with the constitutional requirement, and upon the last named date the loan was authorized. On the 13th March, 1915, an ordinance, No. 586, was passed by the Mayor and City Council of Baltimore authorizing the Commissioners for the Opening of Streets to condemn, open and widen St. Paul street, between Lexington street and Hamilton street, the cost of such opening to be taken from the loan made as previously mentioned. The Commissioners for Opening Streets proceeding under this power have expended $260,548.40, out of $350,000, which the Board of Estimates apportioned from the authorized loan to be utilized for the purpose of the widening of St. Paul street.

On March 9th, 1916, the bill in the present case was filed by certain taxpayers, to enjoin the Mayor and City Council of Baltimore from any further expenditure of the proceeds of this loan for the purpose of the opening and widening of St. Paul street, and also for a mandatory injunction to require the Mayor and City Council of Baltimore to restore to the Harbor Improvement Fund the amount which had been expended for that purpose and charged to the Harbor Improvement Fund.

An answer was filed by the City and testimony taken, and a decree was entered by the Circuit Court No. 2 of Baltimore City granting both the prohibitory and mandatory injunctions, and it is from that decree that the present appeal has been taken.

In connection with the decree a quite full opinion was filed by the painstaking judge before whom the case was tried in Baltimore City, and in that opinion he passes upon three distinct points.

The first of these had relation to an alleged excess of condemnation, and that the property or some portion of it proposed to be taken, was not to be taken for public use as a street, but for the establishment of a municipal garage. This allegation of the bill was not sustained by the evidence, and it was so held in the opinion filed in Circuit Court No. 2, a conclusion with which this Court entirely concurs.

The second point disposed of in the opinion of the Court below also had relation to excess of condemnation beyond what was necessary for municipal purposes for the widening of the street. Upon this point also that Court reached an opinion in favor of the City. In any such question there are a number of distinct elements which necessarily enter into the consideration, such as the amount of traffic to be accommodated, and natural configuration of the land at the point or along the line where the widening is to be made, and this is especially true in a large and thickly built-up city. For the determination of such matters there is necessarily involved the exercise of a large degree of discretion by the

municipal officials charged with the duty of giving effect to
the object to be accomplished, and it is a well settled rule of
law that the exercise of such a discretion by municipal offi-
cials will not be interfered with by a court except in cases
amounting to fraud or bad faith.  *High on Injunction,* sec.
1240; *Elliott on Roads and Streets,* sec. 257; *Alberger* v.
*Baltimore City,* 64 Md. 1; *Madison* v. *Harbor Board,* 76
Md. 395; *Henkel* v. *Millard,* 97 Md. 30; *Baltimore* v. *Flack,*
104 Md. 121.

The third point dealt with upon which the Circuit Court
No. 2 based its decree, seems to have been that by the use
of the term "Harbor Improvement Fund" it was the idea
of the Legislature to restrict the purposes for which the pro-
ceeds of the loan might be used to piers, improvements of the
channel, and to streets which immediately adjoined the har-
bor, and that inasmuch as the widening of St. Paul street,
as contemplated, involved the widening of an artery com-
municating with the harbor for a distance between one-half
and three-quarters of a mile from the actual water front, that
it was too remote and could not properly be made a charge
against that which was designed primarily to improve the
water terminal facilities of the harbor of Baltimore.  In this
view this Court is unable to agree.

Such a conception of the Act is certainly a narrow one,
and ignores the fact that by the very language of Section 2
of the Act it was the purpose to develop a "comprehensive
plan" for the improvement of the harbor.  An improvement
simply of docks and piers, or a dredging of channels without
adequate means of access to them and egress from them would
be of little or no avail for the accomplishment of the objects
which it was the evident purpose of the Act to attain, and it
is well said in *Sutherland on Statutory Construction,* sec.
471, that "the purpose for which a law was enacted is a mat-
ter of prime importance in arriving at a correct interpreta-
tion of its terms.  It accords with LORD COKE's rule and a
rational sense of what is suitable, to ascertain what were the

circumstances with reference to which the words of the statute were used, and what was the object appearing from those circumstances which the Legislature had in view."

In dealing with this question the second section of the Act speaks of the streets adjacent to and along the Patapsco River. A proper definition of the words "adjacent to" is not easy to formulate. It was said in *People* v. *Keechler,* 194 Ill. 235, that this phrase "has no arbitrary meaning or definition. Its meaning must be determined by the objects sought to be accomplished by the statute in which it is used," and in 1 C. J. 1196, it is said: "The term is a relative and not a definite and absolute one, and the exact meaning of the word is determinable principally by the context in which it is used and the facts of each particular case, or by the subject-matter to which it is applied and the object which the Legislature is seeking to carry out." The courts draw a distinction between the terms "adjoining" and "adjacent to," and thus in *Hanifen* v. *Armitage,* 117 Fed. 845, it is said: "There are degrees of nearness and when you want to express the idea that a thing is immediately adjacent you have to say so." See also other definitions in 1 *Words & Phrases,* 184.

To how far a distance the words "adjacent to" apply has varied greatly owing to the particular circumstances of the case, in the many cases in which the courts have been called on to construe this language. Thus, in *Henderson's Lessee* v. *Long,* 3 Tenn. (Cooke) 128, the term was held applicable to land which was fifteen miles distant, and lands within hauling distance and within three miles have also been held "adjacent" in a number of other cases.

"The principles which govern courts of justice in the construction of statutes are simple and well defined. Among them the cardinal one is that the intention of the Legislature is to be carried out. That intention is to be collected from the words of the statute by considering every part of it. *U. S.* v. *Fisher,* 2 Cranch, 386. It may also be ascertained by

considering the causes or necessity of making the Act." *Frazier* v. *Warfield,* 13 Md. 301.

And it was said in the *Canal Co.* v. the *R. R. Co.,* 4 G. & J. 152, that when this intention or the causes for the making of the Act are ascertained, it ought to be followed, although such construction may seem to be contrary to the letter of the statute. This rule has since been frequently reaffirmed in Maryland. *Miller* v. *Cotton Factory,* 26 Md. 478; *Commercial Association* v. *Mackenzie,* 85 Md. 132; *State* v. *Central Trust Co.,* 106 Md. 272; *Sheehan* v. *Tanenbaum,* 121 Md. 283.

With this as the rule which must be applied, and bearing in mind the language of the Act, that the proceeds of this loan were to be applicable to and used for the laying out, projecting, constructing and establishing of a *comprehensive system* for the improvement of the water front of, adjacent to and along the Patapsco River, and the proviso that the enumeration of special objects and purposes was not to be taken or construed as restricting or impairing in any degree the scope of the general objects and purposes mentioned in the Act, it is impossible to arrive at any other conclusion than that it was the intent of the Legislature to vest in the municipal corporation of Baltimore, through its regularly constituted agencies, a large degree of discretionary power as to what was involved in the establishment of a *"comprehensive system"* for the improvement of the water front of that city, a discretion which has in part been exercised by the proposed widening of St. Paul street as a desirable means by which to promote the accessibility of such water front.

The appellant in the brief filed, and also in the oral argument, invoked the doctrine of laches as applicable to the present case. The Act of the Legislature became a law in April, 1910. The ordinance authorizing the loan was passed by the City Council, and approved by the Mayor in October, 1914, and later in the same year appeared the ordinance of estimates, in which full notice was given of the approval by

the Board of Estimates to the idea of using $300,000 of the proceeds of the loan for the widening of St. Paul street; the final ordinance for which was passed on March 13, 1915, and the bill of complaint in this case was not filed until March 7, 1916, or about one year after the final action had been had by the Mayor and City Council, and not until after $260,000 had been actually expended upon the proposed widening. No explanation is given for this delay, and the facts as stated bring the case as to the money already spent directly within the decision in the case of *Tash* v. *Adams,* 10 Cushing, 252. In that case the town of Natick had on the 17th of September voted certain money to be used for a celebration, which was to be held in October, and on the faith of that action certain contracts had been entered into and moneys paid. One month later, on October 18th, a bill was filed similar to the bill in this case, and the Supreme Court of Massachusetts held the complainants barred by their laches, with regard to all money paid out prior to the time of the filing of the bill, but sustained the bill as to further payments. To the same purpose, under facts closely analogous to those presented by this record, is the decision in *Collings* v. *Camden,* 27 N. J. Eq. 293, which involved an increase of municipal indebtedness.

Other cases might be cited substantially to the same effect, but for the reasons already indicated this Court is of opinion that the bill in the present case is not maintainable, either as to moneys already paid out or contracted for, or such further bills as may be incurred up to the extent of the amount already approved by the Board of Estimates, and accordingly the decree from which this appeal was taken will be reversed, and the bill dismissed.

> *Decree reversed, and bill dismissed, the appellees to pay the costs.*