WILLIAMS t/a Marshall Heating and Air
Conditioning Company *v.* PUBLIC
SERVICE COMMISSION
OF MARYLAND

[No. 143, September Term, 1975.]

*Decided April 9, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ■O'DONNELL, JJ.

*John O. Seiland* for appellant.

*James A. Pine, General Counsel* and *Teresa M. Bay, Staff Attorney,* with whom were *Gary R. Alexander, People's Counsel* and *Robert V. Lazzaro, Assistant People's Counsel* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

The appellant, Charles Marshall Williams (Williams), is a heating and air conditioning contractor who regarded himself as aggrieved by an order of the Public Service Commission (the Commission) entered on 25 January 1975. Williams, therefore, entered an appeal from that order in the Circuit Court for Baltimore County. After affirmance of the Commission's order by that court, Williams appealed to the Court of Special Appeals. We granted certiorari before the case was heard there.

By order entered on 2 March 1973, the Federal Power Commission (the FPC) had directed all interstate natural gas pipeline companies to adopt nine priority service categories which ranged in descending order of priority from residential and small commercial consumers, through large commercial and industrial consumers under firm contracts, to several classes of consumers under interruptible contracts. On 21 December 1973, the FPC, in a continuing effort to implement emergency procedures for the conservation of natural gas, requested the cooperation of all state regulatory agencies in implementing the FPC program by requiring gas distribution companies to develop, at the state level, procedures for the conservation and efficient utilization of natural gas.

On 20 November 1973, a month before the FPC order, the Maryland Commission [1] issued an order instituting a proceeding to investigate the policies of gas distribution companies regarding priorities, curtailment and allocation of natural gas supplies. The order set the matter for hearing on 5 December 1973 and directed that gas distributors present policies regarding priorities, curtailment and allocation. Copies of the order were sent to the 10 distributors of natural gas in Maryland.

Apparently as a result of this investigation, Baltimore Gas and Electric Company (Baltimore G & E) adopted a

---

1. The Commission is charged by Maryland Code (1957, 1975 Repl. Vol.) Art. 78, § 1, *et seq.*, with regulating all "public service companies," which by definition includes gas distributors.

curtailment plan which gave rise to the filing of formal complaints with the Commission by certain interruptible industrial customers of the utility. By order of the Commission entered on 25 October 1974, the complaint and the Baltimore G & E curtailment plan were set for hearing before the Commission on 13 and 20 November 1974. This order further provided that the curtailment plans of other gas distributors would be set for hearing at dates to be later fixed by the Commission. Copies of the 25 October order were mailed to the 10 distributors of gas and to counsel for the industrial customers who had filed the complaint.

The record indicates that when Washington Gas Light Company and Frederick Gas Company, two other distributors, sought authority to adopt curtailment plans on 27 November and 4 December 1974, respectively, their plans were set for public hearing on 27 and 30 December, respectively. The order setting these hearings required each distributor to publish, in newspapers of general circulation in the service areas, display advertisements giving notice of the time, date, place and purpose of the hearings as well as fixing the time within which petitions for intervention had to be filed.

The Commission has conceded that no public notice of the Baltimore G & E hearing was ever given.

As a result of these hearings, the Commission issued Order No. 61101 on 22 January 1975, requiring each gas distributor under its jurisdiction, effective 15 February:

> "to discontinue gas service for: (a) outdoor gas lamps used for aesthetic purposes and where other means of area or street lighting exist, (b) gas fireplaces, (c) heating of outdoor swimming pools, (d) heating of residential garages, and (e) converting existing non-gas using appliances to gas appliances."

It is this last prohibition which affects Mr. Marshall. As a heating contractor, a substantial portion of his business consists either of converting furnaces burning coal or oil into

furnaces fired by gas or replacing furnaces burning coal or oil with gas furnaces.[2] His principal argument is that:

> "it was a denial of [his] constitutional and statutory rights of due process of law for [the Commission] to pass an order affecting [his] property and contract rights without being afforded due notice and an opportunity to be heard."

The Commission readily concedes that no public notice of the hearing on the Baltimore G & E curtailment plan was ever given, but argues, nevertheless, that the news media had made the Commission's investigation common knowledge.[3] Marshall counters with the contention that since the hearings set for November, 1974 were centered around the complaint of the interruptible industrial consumers, with which he was familiar, he had no reason to anticipate that an order curtailing the residential use of gas would evolve.

It seems to us that Marshall has the better of the two arguments. That he was a person affected by the order of 22 January 1975 was conceded by the Commission in the Circuit Court and at argument before us.

While Maryland Code (1957, 1975 Repl. Vol.) Art. 78 (the Public Service Commission Law) § 97 provides:

> "Every final decision, order, rule or regulation of the Commission shall be prima facie correct and

---

2. Mr. Marshall makes the point that the order was directed at the "conversion" rather than the "replacement" of "appliances." These are all terms of art within Mr. Marshall's trade, and Mr. Marshall presented evidence that, within the trade, a furnace is not an "appliance," and a "conversion" is merely the installation of a new burner unit of a furnace. Thus, Mr. Marshall argues that the order is too vague to be implemented by the Commission. While we do not consider this argument for reasons to be developed, we do note that the obvious purpose of the order was to ban non-essential uses and to prohibit the substitution of gas for other fuels.

3. See, e.g., Baltimore Sun, Oct. 25, 1974, § C, at 7, reporting on the formal complaint of the interruptible industrial customers to the Commission and the fact that the Commission intended to hold hearings on Baltimore G & E's curtailment plan. The story nowhere indicates that residential users of natural gas would be directly affected.

shall be affirmed unless clearly shown to be (1) in violation of constitutional provisions, or (2) not within the statutory authority or jurisdiction of the Commission, or (3) made upon unlawful procedure, or (4) arbitrary or capricious, or (5) affected by other error of law, or (6) if the subject of review is an order entered in a contested case after hearing, such order is unsupported by substantial evidence on the record considered as a whole,"

our predecessors have held that an order of the Commission may be set aside upon a clear and satisfactory showing of illegality, *Baltimore Gas & Electric Co. v. McQuaid*, 220 Md. 373, 382, 152 A. 2d 825, 829-30 (1959).

Moreover, § 73 of Article 78 specifically calls for due notice and an opportunity for all interested parties to be heard prior to the adoption of a regulation:

"The Commission may by regulation passed *after due notice and opportunity for interested parties to be heard* prescribe standards of safe, adequate, reasonable and proper service for any class of public service company, which in its opinion will best promote the security or convenience of the public, of those employed in furnishing service, and of those to whom service is rendered; and to those ends, the Commission may enforce the standards set by it, and may by order require such changes and additions in the service of any public service company as it may deem necessary, including but not limited to repairs or improvements in plant, increase in motive power and change in schedule or manner of operations." (emphasis supplied).

It is true that *Albert v. Public Service Comm'n*, 209 Md. 27, 36, 120 A. 2d 346, 350-51 (1956) is authority for the proposition that, in the absence of a statutory requirement, due process does not require that a hearing be held when the Commission acts in a legislative or administrative-legislative capacity (as distinguished from a judicial or quasi-

judicial capacity). *See also* Cohen, *Some Aspects of Maryland Administrative Law*, 24 Md. L. Rev. 1, 10-11 (1964); Oppenheimer, *Administrative Law in Maryland*, 2 Md. L. Rev. 185, 204 (1938). *Albert* simply cannot be stretched to support the proposition that once a hearing is scheduled in response to a statutory mandate, the required statutory notice need not be given to those whose rights may be affected. Actual notice was given by the Commission to the gas distributors and to the industrial customers who had filed complaints. Notice by publication should have been given to residential consumers and other interested persons, a class of which Marshall was a member. Without such required notice, the Commission's order of 22 January 1975 must be considered illegal and, therefore, set aside, *Baltimore Gas & Electric Co. v. McQuaid, supra,* 220 Md. at 382.

The Commission, relying on *Albert v. Public Service Comm'n, supra,* 209 Md. at 29-30, would have us hold that an opportunity for judicial review where additional evidence may be introduced will, in a close case, "swing the decision to the side where no hearing [was] necessary" before the Commission. *See also Leroy Fantasies, Inc. v. Swidler,* 44 App. Div. 2d 266, 354 N.Y.S.2d 182 (1974) where an order prohibiting the use of decorative gas torches in a restaurant was upheld in a case where the argument of the restaurant had been submitted in writing to the regulatory body before its decision, but no hearing was held. But the lack of a hearing cannot be analogized to a lack of notice, because here a record was made before the Commission, and judicial review, under Code (1957, 1975 Repl. Vol.) Art. 78, § 97, may turn on whether the order is supported by "substantial evidence on the record considered as a whole." Marshall had no opportunity to participate in the making of the record before the Commission, and it may be that he could have presented sufficient evidence to persuade the Commission to come up with some other program for the curtailment of gas usage than the one that was promulgated.

We need not consider whether Order No. 61101 is arbitrary, capricious and unreasonable or void for

vagueness, since our holding is confined to the conclusion that there was a failure to afford the required statutory notice of the hearing.

We shall therefore reverse the order of the Circuit Court for Baltimore County and remand the case to that court in order that Order No. 61101 may be vacated and that there may be a further remand of the case to the Commission for reconsideration at a hearing after proper notice has been given to all interested parties.

> *Order reversed; case remanded for further proceedings as hereinabove set forth; costs to be paid by appellee.*