# UNNAMED PHYSICIAN *v.* COMMISSION ON MEDICAL DISCIPLINE OF MARYLAND

[No. 33, September Term, 1978.]

*Decided April 23, 1979.*

2

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*James D. Johnson,* with whom was *Sheldon H. Braiterman* on the brief, for appellant.

*Jack C. Tranter, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. MURPHY, C. J., and ORTH, J., concur in part and dissent in part. MURPHY, C. J., filed an opinion concurring in part and dissenting in part, in which ORTH, J., joins at page 15 *infra.*

The primary question presented in this case is whether the proceedings, records and files of a medical review committee are protected by statute from the subpoena power of the Commission on Medical Discipline. We shall examine certain sections of the Maryland Code (1957, 1971 Repl. Vol., 1978 Supp.), Article 43, to determine if the legislative intent and answer to this question is manifest.

Section 130A establishes the Commission on Medical Discipline of Maryland (the Commission) as the agency of the Department of Health and Mental Hygiene charged primarily with the supervision and control of physicians. Section 130 (h) sets forth eighteen (18) separate grounds upon which the Commission may discipline a physician. Section 130 (i) empowers the Commission to issue subpoenas and administer oaths in connection with any investigation, hearing or proceeding. Section 130 (j) entitles any physician whose case is referred to the Commission to appear with counsel at any scheduled hearing. Section 130 (q) forbids the record of Commission proceedings to be admitted into evidence in any proceeding, civil or criminal, except by the express consent

of the parties.[1] Section 130 (r) provides that no member of the Commission, no complainant or investigator shall be liable for his participation in prosecution of the complaint if such person acted without malice.[2]

In 1976, the General Assembly amended Article 43 by adding § 134A which permits a hospital (and other providers of health care) to establish from its medical staff, a medical review committee. Such committee may also discipline a physician for unprofessional conduct by limiting or denying him staff privileges. Section 134A (d) is entitled "Confidentiality of proceedings, records, and files of committee," and provides:

> The proceedings, records, and files of a medical review committee are neither discoverable nor admissible into evidence in any civil action arising out of matters which are being reviewed and evaluated by the committee. This immunity does not apply to a civil action brought by a party to the proceedings of the review committee and claiming to be aggrieved by the decision of the committee. Also, this immunity does not extend to any records or documents considered by the committee which would

---

1. Section 130 (q):

(q) *Admissibility in evidence of Commission's records.* — The records of any proceeding before the Commission or of any of its investigatory bodies or any order passed by the Commission may not be admitted into evidence in any proceeding, civil or criminal, except by the express stipulation and consent of all parties to the proceeding. This section may not be construed to prevent the production of medical records, hospital records, or any other exhibit in any other proceeding, provided that the medical records, hospital records, or other exhibit is legally subpoenaed and is otherwise admissible.

2. Section 130 (r):

(r) *Exemption of Commission members and others from civil liability.* — A member of the Commission and any person who makes a complaint to the Commission or who investigates or prosecutes the complaint on its behalf is not liable to any person in any civil proceeding on account of having made the complaint, investigated the complaint, prosecuted the complaint, heard the complaint or acted upon the complaint, provided that such member of the Commission or other person enumerated herein did not act with malice.

otherwise be subject to discovery and introduction into evidence in a civil action.

Section 134A (e) provides:

(e) *Immunity from liability for damages.* — A medical review committee, individual members of a committee, or any person (1) providing information to, (2) participating in, or (3) contributing to the function of a committee are immune from liability for damages from their activity if their actions are taken in good faith and within the scope of the committees' jurisdiction.

Under this state of the law, the following controversy arose between the medical review committee of Saint Joseph Hospital, Inc. (Hospital Committee) and the Commission. In September of 1974, this Hospital Committee received a report from an ad hoc committee of the medical staff evaluating the qualifications, competence, and performance of duties of the Unnamed Physician (Physician). The Physician requested a hearing before the Hospital Committee which was held on March 19, 1975. However, the hearing was not concluded and no decision was made.

On October 11, 1976, pursuant to an investigation into the medical practice of the Physician, the Commission issued subpoenas duces tecum [3] to Frank W. Baker, Jr., M.D., Arthur E. Cocco, M.D. and Sister Marie Cecilia, O.S.F.[4] to give testimony and produce the records of the Hospital Committee pertinent to the privileges and practice of the Physician at St. Joseph Hospital, Inc. They refused to comply.

On October 26, 1976 the Commission filed a petition to enforce the subpoenas in the Circuit Court for Baltimore

_____

**3.** Code, Art. 43, § 130 (i) (1957, 1971 Repl. Vol., 1978 Supp.) provides:

*Subpoenas; oaths.* — The Commission may issue subpoenas and administer oaths in connection with any investigation, hearing, or proceeding under this section.

**4.** Dr. Baker is president and chairman of the executive committee of the medical staff. Dr. Cocco is chairman of the executive committee of the department of medicine; Sister Cecilia is the president of Saint Joseph Hospital, Inc.

County. In their answer and motion to quash, the physicians [5] contended that under § 134A (d), the proceedings, records and files of the Hospital Committee were protected from discovery by the Commission. The Physician intervened, contending that the statute authorizing the issuance of the subpoenas, § 130, is unconstitutionally vague under the United States Constitution,[6] the contention being that the failure of the statute to provide for formalized notice and hearing leaves the physician's procedural rights unclear. The trial court ruled that a disciplinary proceeding before the Commission is not a "civil action" within the meaning of § 134A (d) and that therefore the subpoenaed materials are not protected from discovery. Accordingly, the court entered an order to enforce the subpoenas on May 4, 1977.

On appeal, the Court of Special Appeals agreed with the circuit court that a proceeding before the Commission is not a "civil action" within the ambit of the statute. *Cocco v. Md. Comm'n on Med. Discipline,* 39 Md. App. 170, 384 A. 2d 766 (1978). The appellate court, however, did not affirm the judgment below; that court recognized that Art. 43, § 130A,[7]

---

5. Sister Cecilia was not a party to this action since the parties agreed that the information sought was under the control of the doctors.

6. U.S. Const., amend. XIV, § 1.

7. Code, Art. 43, § 130A (1957, 1971 Repl. Vol., 1978 Supp.) provides [emphasis supplied]:

Required reports to Commission by hospitals and courts.

(a) *Reports of denial, limitation or termination of staff privileges for unprofessional conduct; resignation while under formal accusation.* —

(1) Each hospital and related institution shall report to the Commission each denial of a physician's application for staff privileges and each limitation, reduction, or termination of previously granted staff privileges if the action results from any of the causes listed in § 130(h) of this article as unprofessional conduct, or any voluntary resignation of a physician while the physician is under formal accusation of activities listed in § 130(h) of this article.

(2) The report shall be submitted within ten days after the hospital or related institution acts on the staff privileges and shall specify the reasons for the action.

(3) *In no event shall any minutes or notes* taken in the course of determining the denial, limitation, reduction or termination of staff privileges *be subject to review or discovery by any person.*

(b) *Reports of convictions.* — Each court shall report to the Commission each conviction of a physician for any crime involving moral turpitude within ten days after the conviction.

which became effective eight weeks after the entry of the enforcement order, must also be considered in the resolution of the issue. *Id.* at 174-75. The court found that § 130A (a) (3) expressly precludes the discovery of any "minutes or notes" and held that all of the material subpoenaed by the Commission, with the exception of any "minutes or notes" of the Hospital Committee, must be produced. *Id.* at 176-78. The court reversed and remanded the case for further proceedings in accordance with its opinion. *Id.* at 179. Upon petition of the Physician, we granted certiorari to consider whether the proceedings, records, and files of the Hospital Committee could be subpoenaed by the Commission.

The Physician contends that a proceeding before the Commission is a "civil action" as that term appears in § 134A (d) and that therefore the subpoenaed materials are not discoverable. The Commission argues that the Court of Special Appeals properly decided this question and asks us to affirm the judgment of the lower court. We note preliminarily that the relevant statutes do not expressly define the term "civil action," and that this Court has never definitively stated the meaning of the term in any decision.

However, there are many sources which have attempted to explain the meaning of the phrase. *Black's Law Dictionary* 311-12 (rev'd 4th ed. 1968) defines a civil action as:

> [a]n action wherein an issue is presented for trial formed by averments of complaint and denials of answer or replication to new matter ..., an adversary proceeding for declaration, enforcement or protection of a right, or redress, or prevention of a wrong .... Every action other than a criminal action. [citations omitted].

(c) *Subpoena power of Commission.* — The Commission may enforce this section by subpoena.

(d) *Immunity from civil action.* — A person who in good faith provides the information required under this section is immune from civil action for damages resulting from the provision of information.

(e) *Reports not subject to subpoena or discovery.* — A report made under this section is not subject to subpoena or discovery proceeding in any civil action except proceedings arising out of hearings and decisions of the Commission.

*Poe's Pleading and Practice,* § 46 (6th ed. H. Sachs 1970) provides that:

> [a] civil action may be defined to be a proceeding instituted in a court of law for the purpose of obtaining redress for a grievance in the shape of a judgment by the court. "Action" includes all the steps by which a party seeks to enforce any right in a court of law or equity and includes *an appeal taken to a court* of record from the final decision of an inferior court *or administrative body where such appeal is authorized by statute.* "Action" does not include a criminal proceeding. . . . Until defined by the Maryland Rules the word "action" was inapplicable to suits pending in equity, the definition of the word being limited to those matters pending only before the law courts. [emphasis supplied].

While the case law discussing the term "civil action" in the context of a medical disciplinary proceeding is sparse, it tends to support the view that a medical disciplinary proceeding is a "special proceeding," not a civil action in the common law sense. The Supreme Court of Washington in *In re Kindschi,* 52 Wash. 2d 8, 319 P. 2d 824, 825-26 (1958) stated:

> It is somewhat difficult to classify a medical disciplinary proceeding. It is characterized as civil, not criminal, in nature; yet it is quasi criminal in that it is for the protection of the public, and is brought because of alleged misconduct of the doctor involved. Its consequence is unavoidably punitive, despite the fact that it is not designed entirely for that purpose. It is not strictly adversary in nature. It is essentially a *special,* somewhat unique, statutory proceeding, in which the medical profession (under state authorization through the medical disciplinary board) inquires into the conduct of a member of the profession and determines whether disciplinary action is to be taken against him in order to maintain · sound professional standards of conduct for the purpose of protecting

(a) the public, and (b) the standing of the medical profession in the eyes of the public. *Cf. In re Little,* 40 Wash. 2d 421, 244 P. 2d 255.

*See also State Board of Medical Examiners v. Macy,* 92 Wash. 614, 159 P. 801 (1916).

Further, it would appear that a medical disciplinary proceeding does not fit the definition of a civil action (one for the enforcement or protection of a private right or for the redress or prevention of a private wrong) as espoused by courts in other jurisdictions. *E.g., Lee v. Lang,* 140 Fla. 782, 192 So. 490 (1940); *Gillikin v. Gillikin,* 248 N.C. 710, 104 S.E.2d 861 (1958); *Pearson v. State,* 159 Tex. 66, 315 S.W.2d 935 (1958); *State Board of Medical Examiners v. Macy, supra.*

The parties would have us equate disciplinary proceedings involving members of the legal profession with proceedings before administrative agencies citing *Anne Arundel Co. Bar Ass'n v. Collins,* 272 Md. 578, 325 A. 2d 724 (1974) (proceeding against attorney); *In re Diener and Broccolino,* 268 Md. 659, 304 A. 2d 587 (1973) (proceeding against judge); and *Braverman v. Bar Assn. of Balto.,* 209 Md. 328, 121 A. 2d 473, *cert. denied,* 352 U. S. 830, 77 S. Ct. 44, 1 L.Ed.2d 51 (1956) (proceeding against attorney). We decline to do so, recognizing that such proceedings are peculiar to the legal profession the conduct of which is under the supervision of this Court. Our predecessors set forth the rationale for this distinction in *Braverman, supra* at 336:

> The action of a court in exercising its power to disbar or suspend an attorney is judicial in character, but the inquiry is in the nature of an investigation by the court into the conduct of one of its own officers, and is *not the trial of an action at law,* as the order which is entered is only an exercise of the disciplinary jurisdiction which a court has over its officers. [emphasis supplied].

We conclude, therefore, that as a fundamental principle a civil action is an adversary proceeding before a court of law; judicial review of the decision of an administrative agency is

a civil action; a proceeding before the Commission is not a civil action unless the Legislature has clearly manifested an intention that it should be.

In any matter of statutory construction, the cardinal rule is to effectuate the actual intention of the Legislature. *Holy Cross Hosp. v. Health Services,* 283 Md. 677, 393 A. 2d 181 (1978); *Mazor v. State, Dep't of Correction,* 279 Md. 355, 369 A. 2d 82 (1977); *State v. Fabritz,* 276 Md. 416, 348 A. 2d 275, *cert. denied sub nom. Fabritz v. Maryland,* 425 U. S. 942, 96 S. Ct. 1680, 48 L.Ed.2d 185 (1976); *Fairchild v. Maritime Air Serv.,* 274 Md. 181, 333 A. 2d 313 (1975); *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 327 A. 2d 483 (1974); *Hagerstown v. Littleton,* 143 Md. 591, 123 A. 140 (1923); *M. & C. C. of Balto. v. Williams,* 129 Md. 290, 99 A. 362 (1916); *Frazier v. Warfield,* 13 Md. 279 (1859). It is also an established principle that all statutory provisions which relate to the same subject matter and are thus in *pari materia* should be construed together and harmonized as far as possible. *Police Comm'r v. Dowling,* 281 Md. 412, 379 A. 2d 1007 (1977); *Comm'n on Med. Discipline v. Bendler,* 280 Md. 326, 373 A. 2d 1232 (1977); *Dep't of Nat. Resources v. France,* 277 Md. 432, 357 A. 2d 78 (1976); *Demory Brothers v. Bd. of Pub. Works,* 273 Md. 320, 329 A. 2d 674 (1974); *Bd. of Fire Comm'rs v. Potter,* 268 Md. 285, 300 A. 2d 680 (1973); *May v. Warnick,* 227 Md. 77, 175 A. 2d 413 (1961); *Plaza Corp. v. Alban,* 219 Md. 570, 151 A. 2d 170 (1958); *Balto. Credit Union v. Thorne,* 214 Md. 200, 134 A. 2d 84 (1957); *Hagerstown v. Littleton, supra; Smith v. Higinbothom,* 187 Md. 115, 48 A. 2d 754 (1946); *Gregg v. Public Service Commission,* 121 Md. 1, 87 A. 1111 (1913). In *May v. Warnick, supra,* the Court stated that:

> this rule applies when the statutes were passed at different dates, separated by long or short intervals. The statutes are to be compared and brought into full accord if possible, but if they are insusceptible of a construction which will permit all their provisions to fall into complete agreement, *they are to be made to operate together as far as possible, consistent with the evident intent of the latest enactment.* [227 Md. at 83 (emphasis supplied)].

See also *Demory Brothers v. Bd. of Pub. Works, supra; Bd. of Fire Comm'rs v. Potter, supra,* 2A Sutherland, *Statutory Construction,* § 51.02, at 290-91 (4th ed. C. Sands 1973) and cases cited therein.

Section 130 (q) describes proceedings in which Commission records are not admissible as "a proceeding before the Commission or of any of its investigatory bodies." Certainly the Legislature did not intend to prevent the Commission from considering the proceedings and findings of a local medical society or a committee of the Medical and Chirurgical Faculty. If it were intended that the term civil should extend to the proceedings of the Commission or its subordinate investigatory bodies, the statute would have indicated that such records were inadmissible in criminal or *other* civil proceedings.

Section 134A (d) provides that the proceedings, records, and files of a medical review committee are not discoverable "in any civil action *arising out of* matters which are being reviewed and evaluated by the committee." [emphasis supplied]. A civil action which "arises out of" matters before a medical review committee cannot be equivalent to the matters out of which it arises. If they were equivalent then there could be no purpose in attempting to distinguish one from the other as the statute apparently does. The words "arising out of" in this context necessarily connote the development of one proceeding out of a different proceeding.

Section 130A (e) provides that a report made under that section is not subject to subpoena "in any civil action *except* proceedings arising out of hearings and decisions of the Commission." [emphasis supplied]. The very purpose of § 130A is to assure that the Commission obtains reports of physician misconduct for later use in disciplinary proceedings. The exception provided for in § 130A (e) would be entirely superfluous if it were construed to pertain to those same proceedings. It is clear to us that if the Legislature intended that the exception apply to Commission proceedings it should have said "except proceedings of the Commission" rather than "except proceedings *arising out of* hearings and decisions of the Commission." [emphasis supplied].

Viewed in this light, it becomes manifest that the Legislature must have regarded the matters reviewed by a medical review committee as something other than a civil action. In this context it appears probable that the words "civil action" were intended to mean a tort action for medical malpractice. We conclude therefore that the subpoenaed materials are not statutorily protected from discovery.

We shall not entirely affirm the decision of the Court of Special Appeals, however. While we agree with that court that § 130A should be considered in the resolution of this case,[8] we do not agree that § 130A (a) (3) insulates "minutes and notes" taken by the Hospital Committee from discovery by the Commission. We do not agree that the Commission is a "person."

Section 130A (a) (3) provides that "[i]n no event shall any minutes or notes taken in the course of determining the denial, limitation, reduction or termination of staff privileges be subject to review or discovery *by any person.*" [emphasis supplied]. This Court has consistently held that the word "person" in a statute does not include the State, its agencies or subdivisions unless an intention to include these entities is made manifest by the Legislature. *St. Comm'n on Human Rel. v. Baltimore,* 280 Md. 35, 371 A. 2d 645 (1977); *Harden v. Mass Transit Adm.,* 277 Md. 399, 354 A. 2d 817 (1976); *M. & C. C. v. Balto. Gas Co.,* 232 Md. 123, 192 A. 2d 87 (1963); *Huffman v. State Roads Commission,* 152 Md. 566, 137 A. 358 (1927).[9] The Court of Special Appeals found such an intention. That court recognized a legislative intent to insure the confidentiality of minutes and notes for the protection of the

---

**8.** § 130A should be considered in the disposition of this case. An appellate court must apply the law which is in existence when a case is presented to it for decision, provided that application of any change in the law does not affect intervening vested rights and that the General Assembly has not shown a contrary intention. Co. Council v. Carl M. Freeman Assoc., 281 Md. 70, 376 A. 2d 860 (1977); Rockville Fuel v. Gaithersburg, 266 Md. 117, 291 A. 2d 672 (1972); Yorkdale v. Powell, 237 Md. 121, 205 A. 2d 269 (1963); Tudor Arms Apts. v. Shaffer, 191 Md. 342, 62 A. 2d 346 (1948); Cockerham v. Children's Society, 185 Md. 97, 43 A. 2d 197 (1945); Wade v. St. Mary's Indust. School, 43 Md. 178 (1875); Day v. Day, 22 Md. 530 (1865).

**9.** The Commission on Medical Discipline is an agency of the Department of Health and Mental Hygiene. Comm'n on Med. Discipline v. Bendler, 280 Md. 326, 373 A. 2d 1232 (1977).

physician whose conduct was being evaluated. However, the court failed to answer the vital question which is: from whom are the minutes and notes protected?

We find in § 130A no manifestation of a legislative intention that the Commission be considered a "person." All the other provisions of § 130A seem to be designed to facilitate acquisition by the Commission of all possible findings and conclusions of a hospital committee. Sections 130A (a) (1) and (2) provided that hospital committees shall promptly report action taken concerning a physician's staff privileges and the reasons for such action to the Commission. Section 130A (b) requires courts to report convictions of physicians for crimes involving moral turpitude. Section 130A (c) allows the Commission to enforce these reporting requirements by subpoena. Section 130A (d) encourages testimony concerning a disciplinary matter by providing immunity from civil action for damages resulting from the provision of such information. To read § 130A (a) (3) as showing a legislative intent to consider the Commission a "person" and thus have the minutes and notes of a hospital committee fall outside the Commission's authority is plainly inconsistent with the evident intent of all the other subsections of § 130A. In addition, it would be incongruous to say that the Legislature intended to insulate minutes and notes from the Commission when the statute provides broad subpoena powers for the Commission to ascertain not only the action taken by a hospital committee, but also the reasons for that action, without regard to the type or source of that information, as in § 130A (c).

This reading of § 130A does not undermine the confidential nature of minutes and notes where that confidentiality is important. As we see it, the use of the term "person" in § 130A (a) (3) would prevent outsiders, such as former patients, from getting minutes and notes that relate solely to professional disciplinary proceedings. A more fundamental reason for preserving confidentiality in these proceedings is to ensure a high quality of peer review activity leading to the primary goal of this legislation — to provide better health care.

As such § 130A (a) (3) may be harmonized with § 130A (e). The only time a report made under § 130A would be discoverable would be when a physician is appealing from disciplinary action taken against him. Section 130A (e) states: "A report made under this section is not subject to subpoena or discovery proceeding in any civil action *except proceedings arising out of hearings and decisions of the Commission.*" [emphasis supplied]. The only proceeding we perceive arising out of a disciplinary decision is an appeal from Commission action. Thus a report would be insulated from discovery by a malpractice plaintiff, as would the "minutes and notes" and the "proceedings, records, and files" of the Hospital Committee.

We believe that our reading of § 130A (a) (3) is consistent with our obligation to harmonize, to the extent possible, different statutes related to the same subject matter. We hold, therefore, that the Commission may subpoena the "minutes and notes" of the Hospital Committee and that the "proceedings, records, and files" of the Committee are also discoverable.

Finally, the Physician claims that § 130 is unconstitutional because it denies him due process in that it fails to provide for formal notice of hearing and generally is void for vagueness. We find these contentions to be without merit. In the instant case the Commission proceedings had not reached a hearing stage requiring notice under Article 41, § 251 of the Administrative Procedure Act (Code 1957, 1971 Repl. Vol., 1978 Supp.), made applicable to the Commission by Art. 43, § 130 (j). Here the Commission was exercising a quasi-legislative investigatory function where due process does not mandate a hearing. *Mont. Co. v. Woodward & Lothrop,* 280 Md. 686, 376 A. 2d 483 (1977), *cert. denied,* 434 U. S. 1067 (1978); *Williams v. Public Service Comm'n,* 277 Md. 415, 354 A. 2d 437 (1976); *Chevy Chase Village v. Board,* 249 Md. 334, 239 A. 2d 740 (1968); *Albert v. Pub. Serv. Commission,* 209 Md. 27, 120 A. 2d 346 (1956).

We also conclude that § 130 is not void for vagueness. As we indicated initially, the statute informs a physician that if he engages in any of the activities forbidden by § 130 (h) he

will be subject to discipline and the possible loss of his license. This is plain language which can be understood by persons of ordinary intelligence. "That is all that is required of a statute in order to prevent it from being vague and indefinite in a constitutional sense." *Richards Furniture v. Board,* 233 Md. 249, 264, 196 A. 2d 621 (1964). *See also Governor v. Exxon Corp.,* 279 Md. 410, 370 A. 2d 1102 (1977), *aff'd,* 437 U. S. 117 (1978); *Northampton Corp. v. Wash. S.S. Comm'n,* 278 Md. 677, 366 A. 2d 377 (1976); *Bowie Inn v. City of Bowie,* 274 Md. 230, 335 A. 2d 679 (1975); *Bd. of Co. Comm'rs v. Colgan,* 274 Md. 193, 334 A. 2d 89 (1975); *Giant of Md. v. State's Attorney,* 267 Md. 501, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915 (1973). We therefore affirm that portion of the opinion of the Court of Special Appeals which holds that a proceeding before the Commission is not a "civil action" under Art. 43, § 134A (d) and reverse that portion which holds that the minutes and notes of the Hospital Committee are not discoverable by the Commission. The cause is hereby remanded to the Court of Special Appeals for proceedings consistent with this opinion.

> *Judgment of the Court of Special Appeals reversed in part and affirmed in part; case remanded to that court for proceedings consistent with this opinion; appellant to pay costs.*

*Murphy, C. J., concurring in part and dissenting in part:*

I fully agree with the Court that a proceeding before the Commission on Medical Discipline is not "civil action" within the meaning of Maryland Code (1957, 1978 Cum. Supp.), Article 43, § 134A. I do not, however, agree with the Court's holding that the Commission may, notwithstanding the provisions of § 130A (a) (3), subpoena "minutes or notes" taken by the Hospital Committee in the course of determining the denial, limitation, reduction or termination of a physician's staff privileges. Section 130A (a) (3) provides in no uncertain terms that such "minutes or notes" are not "sub-

ject to review or discovery by any person." Whether the Commission is a "person" within the meaning of that subsection can only be ascertained by considering § 130A in its entirety. That section mandates that certain required "reports" be filed with the Commission. It provides:

"(a) Reports of denial, limitation or termination of staff privileges for unprofessional conduct; resignation while under formal accusation. — (1) Each hospital and related institution shall report to the Commission each denial of a physician's application for staff privileges and each limitation, reduction, or termination of previously granted staff privileges if the action results from any of the causes listed in § 130(h) of this article as unprofessional conduct, or any voluntary resignation of a physician while the physician is under formal accusation of activities listed in § 130(h) of this article.

"(2) The report shall be submitted within ten days after the hospital or related institution acts on the staff privileges and shall specify the reasons for the action.

"(3) In no event shall any minutes or notes taken in the course of determining the denial, limitation, reduction or termination of staff privileges be subject to review or discovery by any person.

"(b) Reports of convictions. — Each court shall report to the Commission each conviction of a physician for any crime involving moral turpitude within ten days after the conviction.

"(c) Subpoena power of Commission. — The Commission may enforce this section by subpoena.

"(d) Immunity from civil action. — A person who in good faith provides the information required under this section is immune from civil action for damages resulting from the provision of information.

"(e) Reports not subject to subpoena or discovery. — A report made under this section is not subject

to subpoena or discovery proceeding in any civil action except proceedings arising out of hearings and decisions of the Commission. (1977, ch. 173.)"

In concluding that the Commission was not authorized to subpoena the notes or minutes, the Court of Special Appeals made these cogent observations:

"The parts of art. 43, § 130A (a) are interrelated. Subsection (a) (1) requires that hospitals make certain reports to the Disciplinary Commission. Subsection (a) (2) specifies the time of filing and content of the required report. Thus, the context of subsection (a) (3) requires it to be read as describing material which shall neither be included in the report nor otherwise made available to the Disciplinary Commission.

"The legislative history of art. 43, § 130A (Senate Bill 263) shows that, as originally proposed, that Bill did not prohibit review or discovery of a hospital's minutes or notes concerning the status of a physician's staff privileges. A Senate Finance Committee Report, dated 28 February 1977, recommended, among other things, that the Bill be amended to include such a prohibition and that the Bill as amended be enacted. The report described the purpose of the proposed legislation as follows:

'The bill provides a means by which the Commission on Medical Discipline can learn of, and review each denial or reduction of a physician's staff privileges, and other occurrences of unprofessional conduct. *As amended, the bill also safeguards the rights of the accused by denying discovery of pertinent notes regarding the investigation of a physician.'* (Emphasis in original.)

"The Bill was enacted as amended.

"This history establishes that the purpose of subsection (a) (3) is to protect an accused physician from the disclosure of certain materials. To accomplish that purpose fully, subsection (a) (3) must be read as excluding minutes or notes concerning the status of a physician's staff privileges from

the material which a hospital is otherwise required to make available to the Disciplinary Commission, a body authorized to impose sanctions upon a physician for unprofessional conduct.

"Thus the context, the legislative history, and the purpose of art. 43, § 130A (a) (3) establish a manifest legislative intent that the Disciplinary Commission be included in the word 'person.' We now consider the relation between that provision and other parts of the statute.

"Article 43, § 130 (i) authorizes the Disciplinary Commission to issue subpoenas. It does not restrict the type of material which a hospital may be required to produce. Article 43, § 130A (c), also authorizes the Disciplinary Commission to issue subpoenas. Article 43, § 130A (a) (3), however, restricts the typc of material which a hospital may be required to produce by excluding 'minutes or notes.' That section provides that '[i]n no event' shall those 'minutes or notes' be made available to the Disciplinary Commission. Under these circumstances, in order to harmonize and reconcile these three provisions, art. 43, § 130A (a) (3) must be read as restricting the Disciplinary Commission's authority to compel the production of 'minutes or notes,' not only under art. 43, § 130A (c), but also under art. 43, § 130 (i). . . ." *Arthur E. Cocco et al. v. Maryland Commission on Medical Discipline,* 39 Md. App. 170, 384 A. 2d 766.

I think it readily apparent that in excluding notes or minutes from Commission subpoena, the Legislature concluded that no need existed for their disclosure since the Hospital Committee was required to make an official report to the Commission of every case in which there was a denial, limitation, or termination of a physician's staff privileges. It undoubtedly recognized the desirability of keeping sacrosanct the notes taken by individual members of the Hospital Committee so as to encourage members freely to make notes of their impressions in the course of considering the issue. The minutes of the Hospital Committee, which would to some extent record and be reflective of the views taken by each individual member were protected from disclosure for the same reason. Of course, if the notes or

minutes were made part of the record before the Commission they would lose their confidential status and enter the public domain once an appeal was taken from the Commission's action. In stating that "in no event" should such material be subject to subpoena "by any person," the Legislature intended a literal application of that language, rather than a more limited technical, legal definition of the term "person." I would, therefore, affirm the judgment of the Court of Special Appeals.

Judge Orth authorizes me to state that he joins in this opinion.