Dear Mr. Alfred W. Redmer, Jr.
You have asked for our opinion on the application of the State Health Maintenance Organization ("HMO") law to the Baltimore City Fire Department ("Fire Department"). Specifically, you ask whether a provision that prohibits health care providers from directly billing HMO patients applies to the Fire Department when it provides emergency ambulance services.
In our opinion, the Fire Department may recover its fees from the HMO for emergency ambulance services that are covered services under the HMO plan. It may not bill the HMO member directly for those services.
 I Balance Billing Prohibition of HMO Law
The Maryland Health Maintenance Organization Act ("HMO law") is codified at Annotated Code of Maryland, Health-General Article ("HG"), § 19-701 et seq. This law provides the statutory basis for the familiar concept of an HMO, under which a member pays a periodic fee to the HMO in return for the HMO's promise to provide or finance health care services for the member without further charge, except for co-payments or deductibles set forth in the HMO plan. See Riemer v. Columbia Medical Plan, Inc., 358 Md.
Since the late 1980s, the Maryland HMO law has prohibited health care providers from charging members of an HMO for a "covered service" provided to the member. HG § 19-710(i), (p).[1] This prohibition applies whether or not the provider is under contract with the HMO; the contractual relationship simply affects the amount of compensation due to the provider. See 88 Opinions of the Attorney General ___ (2003) [Opinion No. 03-005 (March 13, 2003)], slip op. at pp. 2-4. Thus, "subscribers or members owe no debt to any health care provider (i.e., any doctor, hospital, etc.) for any covered services." Riemer,358 Md. at 244. An HMO member remains liable for co-payments and co-insurance as provided in the HMO plan, as well as for any services not covered by the HMO plan. HG § 19-710(p)(3).
 II Ambulance Services
Emergency ambulance services are generally provided by a local government agency or a volunteer fire and rescue company, often in response to a 911 call. See Annotated Code of Maryland, Public Safety Article, § 1-304. Commercial ambulance services are required to defer to the emergency medical services units of public safety agencies in most emergencies. COMAR 30.09.07.04. More than 60 percent of all ambulance transports in Maryland are done by public safety ambulances.[2]
The Emergency Medical Services Division of the Baltimore City Fire Department provides emergency ambulance services to patients with life-threatening diseases or injuries. Since 1989, the Fire Department has been authorized by a City ordinance to charge a fee, set by the Board of Estimates, for such ambulance services. Baltimore City Code, Article 9, § 3-2. The fee may not exceed the cost of providing the service.Id. The ordinance also provides that an individual cannot be denied emergency services simply because of an inability to pay the fee. Id., § 3-3. The proceeds of the fee are to be placed in a special fund for the sole purpose of supporting emergency medical services in the City.Id., § 3-4.
We understand that your inquiry arises from a situation in which an HMO declined to pay the Fire Department the entire fee set by ordinance for emergency ambulance services rendered to one of the HMO's members and the Fire Department billed the HMO member for the remainder of the fee.
 III Analysis A. Covered Service
As explained above, the prohibition against balance billing applies when a provider furnishes a "covered service" to an HMO member. The HMO law defines "covered service" as follows:
 (d) "Covered service" means a health care service included in the benefit package of the health maintenance organization and rendered to a member or subscriber of the health maintenance organization by:
 (1) A provider under contract with the health maintenance organization, when the service is obtained in accordance with the terms of the benefit contract of the member or subscriber; or
 (2) A noncontracting provider under § 19-710.1 of this subtitle, when the service is:
 (i) Obtained in accordance with the terms of the benefit contract of the member or subscriber;
(ii) Obtained pursuant to a verbal or written referral by:
 1. The health maintenance organization of the member or subscriber; or
 2. A provider under written contract with the health maintenance organization of the member or subscriber; or
 (iii) Preauthorized or otherwise approved either verbally or in writing by:
 1. The health maintenance organization of the member or subscriber; or
 2. A provider under w ritten contract with the health maintenance organization of the member subscriber.
HG § 19-701(d) (emphasis added). Whether an emergency ambulance transport provided by the Fire Department may be a "covered service" depends on whether it is a "health care service" for which the Fire Department is the "provider."[3]
 B. Health Care Service
Under the Maryland HMO Act, "health care services" mean "services, medical equipment, and supplies that are provided by a provider" and include ambulance services. HG § 19-701(f)(1), (2)(i). The HMO law itself does not prescribe all of the health care services that an HMO must cover in its plan. It does specify that, by definition, an HMO provides "health care services that include at least . . . emergency services. . . ." HG § 19-701(g)(2).[4]
Emergency services are defined in terms of health care services performed in a hospital emergency facility.[5] It may well be that the Legislature did not specifically include emergency ambulance transports provided by public safety entities on the list of services covered by HMOs because public entities did not generally charge fees for such services when the HMO Act was originally enacted in 1975.[6] However, given that the law includes ambulance services generally within the term "health care services," it is implicit that an HMO plan would cover transportation to the hospital emergency facility by ambulance when necessary —particularly when the emergency services provided at the hospital are themselves "health care services" that the HMO is required to provide under the HMO Act. Accordingly, in our opinion, emergency ambulance service provided by a public safety agency is a "health care service" for purposes of the HMO Act.
C. Provider
Under the Maryland HMO Act, a "provider" is "any person . . . who is licensed or otherwise authorized in this State to provide health care services." HG § 19-701(i) (emphasis added). As noted above, ambulance services are included within the definition of "health care services." While the Fire Department is not subject to the licensing requirements for ambulance services,[7] it is clearly "otherwise authorized" to provide those services. Thus, the Fire Department's status as a "provider" under the HMO Act turns on whether it is a "person."
As a general rule, neither the State nor its political subdivisions are within the compass of legislation imposing obligations on "persons." See Nationwide Mutual Ins. Co. v. U.S. Fidelity Guaranty Co.,314 Md. 131, 141-42, 550 A.2d 69 (1988); Unnamed Physician v. Commission on Medical Discipline, 285 Md. 1, 12-13, 400 A.2d 396 (1979); 85 Opinions of the Attorney General ___ (2000) [Opinion No. 00-001 (January 24, 2000)]. This general rule of construction, which is derived from the doctrine of sovereign immunity, does not apply when the statute manifests a legislative intention to cover governmental entities, or there is no impairment of sovereign powers and the particular provision enhances a proprietary interest of the governmental unit. See 67 Opinions of the Attorney General 380, 385-87 n. 7 (1982).
As is evident, the General Assembly contemplated that emergency services generally, and the ambulance services necessary to provide those services, would be part of the "covered services" financed through HMOs. Emergency ambulance services are almost exclusively provided by public safety entities, either government entities or volunteer fire and rescue companies. Thus, it is consistent with the legislative purpose underlying the HMO Act to include a public safety entity like the Fire Department as a "provider" for purposes of the HMO Act.
Construing the term "provider" to include the Fire Department does not detract from the City's sovereignty. If the Fire Department were not considered a provider, there would be no basis for it to receive payment from the patient's HMO. As a provider, the Fire Department becomes eligible for reimbursement of its fees by an HMO when it transports a member of the HMO. Absent a contract between the City and an HMO, this amount would presumably be the fee set by ordinance.[8] Thus, as a provider under the HMO law, the Fire Department would have access to a more secure source of payment than individual patients, many of whom may not be able to afford the fee set by law.
 IV Conclusion
In our opinion, when the Fire Department provides emergency ambulance services to an HMO member, it acts as a "provider" of a "covered service" for purposes of the State HMO law. Accordingly, the Fire Department is entitled to collect from the HMO the fee set by law; it may not seek payment from the HMO member.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] The origin of the balance billing prohibition in the HMO law is recounted in 83 Opinions of the Attorney General 128, 129-35 (1998).
[2] According to data gathered by the Maryland Institute for Emergency Medical Services Systems ("MIEMSS"), in 2002 public safety ambulances performed 337,362 out of a total of 554,972 ambulance transports in the State. MIEMSS licenses commercial ambulance providers; public safety ambulances are exempt from that requirement. See Annotated Code of Maryland, Education Article, § 13-515.
[3] Of course, as the definition makes clear, to qualify as a "covered service", the service must also be obtained in accordance with the terms of the HMO plan or with the appropriate approval or authorization. This element of the definition does not appear to be at issue in your inquiry.
[4] It is also notable that the comprehensive standard health benefit plan offered by HMOs for small employers in Maryland includes emergency services and ambulance services. COMAR 31.11.06.03A(6), (8). In addition, the federal Health Maintenance Organization Act of 1973 requires federally qualified HMOs to provide "medically necessary emergency services." 42 U.S.C. § 300e(b) and 300e-1(c).
[5] "Emergency services" are defined as "those health care services that are provided in a hospital emergency facility after the sudden onset of a medical condition that manifests itself by symptoms of sufficient severity, including severe pain, that the absence of immediate medical attention could reasonably be expected by a prudent layperson, who possesses an average knowledge of health and medicine, to result in: (1) placing the patient's health in serious jeopardy; (2) serious impairment to bodily functions; or (3) serious dysfunction of any bodily organ or part." HG § 19-701(e).
[6] Chapter 276, Laws of Maryland 1975.
[7] See Annotated Code of Maryland, Education Article, § 13 — 515(a)(3)(ii) (excluding public safety ambulances from the definition of "ambulance service" subject to licensing requirements).
[8] Although the HMO Act provides certain formulas for computing fees for non-contracting providers, they do not appear applicable to a public safety entity whose fees are set by law. In particular, for a non — contracting provider that is not a hospital or a trauma physician, the HMO Act prescribes a rate of payment by reference to what the HMO pays "a similarly licensed provider" in the same geographic area for the same covered service. HG § 19-701(b)(1)(ii)(3). Apart from the question of whether there can be a "similarly licensed provider" to a public safety entity for which there is no licensing requirement, there is no indication in this formula that the General Assembly intended to preempt a fee established by a local government. By contrast, it is notable that the State Medicaid law explicitly addresses fees charged by public safety entities for emergency ambulance transport and sets a specific cap on reimbursements paid by the Medicaid program. See HG § 15-114.1 (public safety entity that charges for services may receive up to $100 for the cost of transportation and medical services from Medicaid program). *Page 60